**FIRE POLICE CITY COUNTY FEDERAL CREDIT UNION, Appellant–Plaintiff,**

v.

**James P. EAGLE, Nancy L. Eagle, Patricia K. Sloffer, and Earl A. Eagle, Appellees–Defendants.**

No. 02A03–0201–CV–17.

Court of Appeals of Indiana.

July 22, 2002.

John E. Williams, Jr., J. Michael Loomis, Fort Wayne, IN, Attorneys for Appellant.

James P. McCanna, McCanna Law Offices, Auburn, IN, Attorney for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Fire Police City County Federal Credit Union (the "Credit Union") appeals the trial court's denial of its motion for summary judgment and the court's award of summary judgment in favor of Nancy L. Eagle, Patricia K. Sloffer, and Earl A. Eagle (collectively, the "Eagles"). The Credit Union raises several issues for our review, but we find the following issue dispositive: whether the trial court erred when it found that, as a matter of law, the decedent, Maralie Eagle, had not committed fraud when she deeded her house to her children shortly before her death.

We affirm.

### FACTS AND PROCEDURAL HISTORY

In July 1999, James Eagle and his mother, Maralie Eagle, applied for a loan with the Credit Union so that James could pay some outstanding debts, and the Credit Union made the loan in the amount of $83,340.39. Maralie signed the note as "co-borrower" and, as such, was jointly and severally liable with James for repayment of the loan. In November 1999, Maralie conveyed her home [1] to her other

---

1. Maralie transferred title by warranty deed to the children for one dollar and other good and valuable consideration. Because this transfer occurred within one year of Maralie's death, it is presumed to be a transfer in contemplation of death. *See* Ind.Code § 6–4.1–2–4(b).

three children, Nancy, Patricia, and Earl. Maralie died a month later on December 5, 1999. The loan was not then in default. Maralie's last will and testament was admitted to probate and an estate opened on January 20, 2000, with Nancy serving as personal representative. In August 2000, counsel for the estate notified the probate court that there was no probate property to administer because Maralie had conveyed her home to three of her children before her death and had held all her remaining assets jointly with either Nancy or Patricia. The probate court found that, indeed, there were no probate assets and that no inheritance tax was due—concluding that Maralie's estate, totaling $127,700.79, had been transferred to her children or was owned jointly with them prior to her death. The Credit Union did not file a claim against Maralie's estate.

In September 2000, some nine months after Maralie's death, James defaulted on the loan. The Credit Union filed suit against James and the Eagles, seeking possession of both the assets pledged as collateral for the loan and Maralie's home, which she had listed as her residence on the loan application. The Credit Union alleged that Maralie had violated the Uniform Fraudulent Transfer Act (the "UFTA") when she conveyed her home to three of her children, a month before her death, in order to avoid her contractual obligation to repay the loan. Both sides filed motions for summary judgment. The trial court granted James and the Eagles' motion while denying the Credit Union's motion, and the Credit Union filed a motion to correct error. The trial court partially granted the motion—awarding the Credit Union summary judgment as against James and a money judgment in

the amount of $75,500.45.[2] But the court denied the Credit Union's motion to correct error as to the Eagles. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

Summary judgment is appropriate only if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). In reviewing a grant of summary judgment, this court stands in the shoes of the trial court and applies the same applicable standard. *Progressive Constr. and Eng'g. Co., Inc. v. Indiana and Mich. Elec. Co., Inc.*, 533 N.E.2d 1279, 1282 (Ind.Ct.App.1989). We will affirm a grant of summary judgment if sustainable on any theory found in the evidence designated to the trial court. *Jacques v. Allied Bldg. Servs. of Ind.*, 717 N.E.2d 606, 608 (Ind.Ct.App.1999).

When the movant's affidavits and other evidence demonstrate the lack of a genuine issue, the burden shifts to the opposing party to demonstrate the existence of a genuine issue for trial. *Id.* Any doubt about the existence of a factual issue should be resolved against the movant, with all properly asserted facts and reasonable inferences construed in favor of the nonmovant. *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 261 (Ind.1994). The party appealing the grant of a motion for summary judgment bears the burden of persuading this court that the trial court erred. *Foster v. Evergreen Healthcare, Inc.*, 716 N.E.2d 19, 23–24 (Ind.Ct.App. 1999), *trans. denied.*

2. Although this judgment would have satisfied the outstanding loan balance of just over $66,000 plus the $5,000 in requested attorney's fees, the Credit Union was unable to collect against James because he had filed for bankruptcy. Thus, the Credit Union sought to recoup the money from the Eagles.

■ While the trial court here issued only a general order at the summary judgment stage, it entered specific findings and conclusions sua sponte in ruling on the Credit Union's subsequent motion to correct error. A trial court's specific findings and conclusions are not required in the summary judgment context, and although they offer valuable insight into the trial court's rationale for its judgment and facilitate our review, they are not binding on us. *SLR Plumbing & Sewer, Inc. v. Turk,* 757 N.E.2d 193, 198 (Ind.Ct.App.2001).

### Fraud Claim

[2] Here, the Credit Union alleges that the trial court erred when it granted summary judgment in favor of the Eagles. Specifically, the Credit Union contends that Maralie committed fraud by deeding her house to her children shortly before her death, in violation of Indiana Code Section 32–2–7–15,[3] and that the Credit Union is therefore entitled to possession of the home in order to satisfy the outstanding balance on the delinquent loan. We cannot agree.

In order to establish that Maralie made a fraudulent transfer prohibited by that particular section of the UFTA, the Credit Union had to show that Maralie (1) made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and (2) *was either insolvent at that*

*time or became insolvent as a result of the transfer or obligation.* *See* Ind.Code § 32–2–7–15 (emphasis added). Under the UFTA, a debtor "is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair market value." Ind.Code § 32–2–7–12(c).

Here, Nancy, Maralie's daughter and executrix of her estate, testified in her affidavit that "[a]t no time from the date of the conveyance of said real estate ... until the death of said Maralie C. Eagle ... was [Maralie] insolvent." And the trial court specifically found, in ruling on the Credit Union's motion to correct error, that "[Maralie] was not insolvent at the time of transfer nor ... was she rendered insolvent by the transfer of the real estate...." The court further found that the Credit Union filed no counter affidavit and Maralie's solvency was not otherwise "controverted by supporting materials."

Nevertheless, the Credit Union contends that a genuine issue of material fact exists as to whether Maralie was insolvent or became insolvent as a result of that allegedly fraudulent transaction. The Credit Union asserts that although it offered no corresponding affidavit to dispute Maralie's solvency, "the file contains documents from the [decedent's] estate that establish a genuine issue of material fact as to the insolvency of Maralie...." Maralie could only have been insolvent if her debts ex-

---

3. Relying on the "paper trail" and the "timing" of events, the Credit Union also contends that "a fraud was perpetrated" when Maralie "converted the asset" before the Credit Union could recover a judgment against her for the loan default. But that contention goes to whether Maralie possessed the intent to defraud the Credit Union, an element not required by Indiana Code Section 32–2–7–15. In contrast, parties alleging fraud under Indiana Code Section 32–2–7–14 must establish that "the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud...." IC 32–2–7–14.

But because the Credit Union specifically alleged a violation of section 15 and not 14, we need not address whether there is a genuine issue of fact regarding Maralie's intent to defraud. Regardless, we agree with the trial court's finding that the designated evidence presents no genuine issue of material fact as to Maralie's "fraudulent intent" in transferring the real estate to her three children. The loan was not in default when Maralie transferred the real estate, nor during her lifetime, and did not go into default until some nine months after her death.

ceeded her assets. *See* Ind.Code § 32–2–7–12(c). The primary document on which the Credit Union relies is a cover letter from counsel for the estate, which says that there was "no probate property" in the estate. Maralie left no probate estate, but that does not mean she was insolvent. While the inheritance tax return shows no probate assets, it also shows no deduction for debts.

The trial court found that Maralie was not insolvent at the time of transfer and that "upon consideration of the inheritance tax return" Maralie was not rendered insolvent when she transferred the real estate. We agree. In itself, the inheritance tax return does not tend to prove that Maralie either was or became insolvent.

The Credit Union also designated the note, but did not designate evidence showing all of Maralie's assets and liabilities when the transfer occurred. Only by considering all of her assets and liabilities could we determine if a genuine issue of material fact exists as to whether the sum of Maralie's debts was or became greater than all of her assets at the relevant time, namely, when she transferred the real estate. *See* I.C. 32–2–7–12(c).

Further, the probate court allowed Maralie's estate to be administered without supervision. A court may allow an estate to be administered without supervision only if several conditions are satisfied, one of which is that the estate must be solvent. *See* Ind.Code § 29–1–7.5–2(a)(2). That determination was not challenged.

■ The Credit Union failed to designate any evidence that would create a genuine issue of material fact as to Maralie's

insolvency. The evidence is undisputed that Maralie was, in fact, solvent at the time she deeded her home to her children and remained solvent until her death. The Credit Union cannot then, as a matter of law, establish that Maralie committed fraud in violation of the UFTA in an attempt to avoid her loan obligation. Thus, the Credit Union cannot seek possession of Maralie's home from the Eagles to satisfy the outstanding balance on the defaulted loan.[4]

### Collateral Attack

■ Finally, even had the Credit Union designated evidence sufficient to create a genuine issue of material fact, it could not have prevailed on its UFTA fraud claim. The probate court had previously determined that Maralie died solvent when it allowed her estate to be administered without supervision. *See* Ind.Code § 29–1–7.5–2(a)(2). Thus, the Credit Union's argument here amounts to a collateral attack on the probate court's finding that Maralie's estate was solvent. Where, as here, the probate court approves the final report and discharges the personal representative, that order cannot be collaterally attacked. *McGahan v. National Bank of Logansport,* 151 Ind.App. 658, 281 N.E.2d 522, 525 (1972).

■ But the Credit Union was not without a remedy. The Probate Code, Indiana Code Section 29–1–17–14(a), provides that after an estate has been settled and the administrator discharged, "any person interested in the estate" may petition to reopen the estate "if it shall appear that any necessary act remains unperformed

---

4. The promissory note designated as exhibit B in the appendix does not contain a "deemed insecure" clause that would have allowed the Credit Union to accelerate collection of the note in the event of Maralie's death. *See* Ind.Code § 26–1–1–208. Thus, even if Maralie had not transferred the real estate before

her death, but had instead devised it to her children through a will, the Credit Union still could not have recovered the balance of the note from the estate because the note was not in default until after the estate had been probated and closed.

... or for any other proper cause[.]" In addition, Indiana Code Section 29–1–1–21 states that "for illegality, fraud or mistake, upon application filed within one (1) year after the discharge of the personal representative upon final settlement, the court may vacate or modify its orders, judgments and decrees or grant a rehearing therein." Similarly, Indiana Code Section 29–1–14–1(f) provides that a "tort claim against the estate of the [tortfeasor] may be opened or reopened within the period of the statute of limitations of the tort."[5] If the Credit Union believed that Maralie had fraudulently transferred her house before her death in order to prevent the Credit Union from satisfying its debt from her probate assets, it should have petitioned to reopen Maralie's estate.

## CONCLUSION

The trial court did not err when it denied the Credit Union's motion for summary judgment and subsequent motion to correct error against the Eagles and awarded summary judgment in favor of the Eagles.

Affirmed.

ROBB and BAILEY, JJ., concur.

---

**5.** This is an exception to the general limitations period. Typically, all claims against a decedent's estate are barred unless filed with the court in which the estate is being administered "within five (5) months after the date of the first published notice to creditors." I.C. 29–1–14–1(a). Regardless, all such claims are barred "if not filed within one (1) year after the death of the decedent." I.C. 29–1–14–1(d).