In re James L. BASSETT, Debtor.

Richard BELFORD, Trustee, Plaintiff,

v.

Carlo F. CANTAVERO and Marilou
Cantavero, Defendants.

Bankruptcy No. 90–51123.
Adversary No. 91–5236.

United States Bankruptcy Court,
D. Connecticut.

May 27, 1998.

Douglas S. Skalka, Neubert, Pepe & Monteith, P.C., New Haven, CT, for Plaintiff.

Carlo & Marilou Cantavero, Cos Cob, CT, Kevin L. Burns, Owens, Schine & Nicola, Trumbull, CT, Mark J. Kovack, Gilbride, Tusa, Last & Spellane, L.L.C., Greenwich, CT, for Defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON COMPLAINT TO AVOID TRANSFERS OF PROPERTY

ALBERT S. DABROWSKI, Bankruptcy Judge.

## I. INTRODUCTION

In this adversary proceeding the Plaintiff–Trustee seeks to avoid and recover the value of real property acquired and then transferred by the Debtor under highly unusual circumstances. Under such unique facts the Court will exercise its equity jurisdiction to prevent a windfall to the Debtor's bankruptcy estate at the expense of the individual Defendants.

## II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(F), (H).

## III. FINDINGS OF FACT

1. The Debtor is a Certified Public Accountant who, at all times relevant hereto, was involved in real estate development projects. He has been a close friend of Defendant Carlo Cantavero since their mutual childhood in Greenwich, Connecticut.

2. Defendant Carlo Cantavero ("Carlo") is a self-described "hairdresser". He, too, was engaged in the development of real estate projects in the time periods relevant hereto.

3. In connection with the aforementioned real estate projects, the Debtor and Carlo were often partners, co-adventurers, and/or business associates. Although the record is

not clear as to specific amounts, it is apparent that, at the times relevant hereto, the Debtor owed debts to Carlo arising from their real estate development activities.

4. At some point during the Summer of 1989, Carlo determined to borrow approximately $200,000.00 for various purposes. Carlo asked the Debtor to inquire about the possibility of obtaining such financing from the Connecticut Community Bank ("Community"), a bank from which both men had borrowed previously, and at which the Debtor enjoyed an ongoing relationship through its President, Robert Oca.

5. The Debtor inquired of Mr. Oca if Community would extend a loan to Carlo if secured by real property then owned by Carlo,[1] which property is known as and numbered Unit 16, Mead's Landing Condominiums, 78 River Road, Greenwich, Connecticut (the "Property"). Mr. Oca replied that Community was not interested in entering into a new lending relationship with Carlo, but would make a loan to the Debtor if *he* owned the Property and mortgaged it to secure the loan.

6. Desperate to obtain the desired funds, Carlo agreed to deed the Property to the Debtor to facilitate the borrowing. On August 31, 1989, Carlo executed a quitclaim deed, conveying title to the Property to the Debtor (the "1989 Transfer"). This quitclaim deed was recorded with the Greenwich, Connecticut Town Clerk on September 13, 1989.

7. On or about September 12, 1989, Community loaned the Debtor $150,000.00 (the "Loan"), in consideration for which the Debtor executed a promissory note (the "Note") and mortgage deed on the Property in favor of Community. This mortgage (the "Mortgage") was recorded with the Greenwich, Connecticut Town Clerk on September 13, 1989.

8. The Debtor did not retain any of the proceeds of the Loan. Instead, he disbursed all of the net proceeds of the Loan on behalf of Carlo, as specifically directed by Carlo.

9. All of the payments made on the Loan were funded by Carlo, not the Debtor.

10. On March 29, 1990, the Debtor executed a quitclaim deed back to Carlo, conveying to him all of the Debtor's "right, title, interest, claim and demand" in and to the Property (the "1990 Transfer").

11. Approximately one month later, on May 1, 1990, Carlo executed a quitclaim deed conveying all of his "right, title, interest, claim and demand" in and to the Property to his wife, Defendant Marilou Cantavero (the "1991 Transfer").

12. On May 30, 1990, Marilou Cantavero ("Marilou") "refinanced" the Property with Housatonic Bank and Trust Co. in the approximate amount of $200,000.00. In the process of this refinancing the Note was paid off and the Mortgage released.

13. On June 15, 1990, an involuntary petition for relief under Chapter 7 of Title 11, United States Code, was filed against the Debtor pursuant to 11 U.S.C. § 303(b). An order for relief on said petition was entered on July 27, 1990, pursuant to 11 U.S.C. § 303(h). Thereafter, Richard Belford—the Plaintiff here—was appointed as the Chapter 7 trustee for the bankruptcy estate of the Debtor.

14. The instant adversary proceeding—seeking avoidance of the 1990 Transfer, and recovery of the Property or its value for the benefit of the bankruptcy estate—was commenced through the filing of a Complaint by the Plaintiff–Trustee on September 30, 1991.

## IV. CONCLUSIONS OF LAW

The Plaintiff–Trustee seeks to avoid the 1990 Transfer under theories of preferential transfer and/or fraudulent conveyance.

### A. Preferential Transfer.

1. At the time of the filing of the Debtor's bankruptcy petition, and the commencement of this adversary proceeding, the avoidance of preferential transfers was provided for

---

1. Carlo acquired his ownership interest in the Property through a transaction or transactions

not involving the Debtor.

solely by Code Section 547,[2] which provided in relevant part as follows:

\* \* \* \* \* \*

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) *for or on account of* an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; ... and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

\* \* \* \* \* \*

11 U.S.C. § 547 (1990) (emphasis supplied).

■ 2. The Plaintiff–Trustee bears the burden of proof by a preponderance of the evidence on all of the elements of a preferential transfer. *See* 11 U.S.C. § 547(g).

■ 3. Although this Court concludes from the evidence presented at trial that Carlo was a "creditor" of the Debtor, the Plaintiff–Trustee has failed to satisfy his burden of proving that the 1990 Transfer was *"for or on account of"* an antecedent debt as required by Subsection 547(b)(2). Accordingly, the 1990 Transfer is not an avoidable preference under Section 547.

**B. Fraudulent Conveyance.**

1. The Plaintiff–Trustee contends that the 1990 Transfer is voidable as a fraudulent conveyance under two separate statutory

schemes. The first is found in Bankruptcy Code Section 548, which provided in relevant part as follows:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation....

11 U.S.C. § 548 (1990).

2. The second statutory scheme cited by the Plaintiff–Trustee is premised upon Bankruptcy Code Section 544(a), which provided in relevant part that—

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or *may avoid any transfer of property of the debtor . . .* that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists ....

11 U.S.C. § 544 (1990) (emphasis supplied). As a hypothetical lien creditor under Section 544(a)(1), the Trustee enjoys rights under, *inter alia,* Connecticut state fraudulent

---

**2.** In 1991, Connecticut first enacted a preferential transfer avoidance/recovery statute. *See*

C.G.S. § 52–552f(b).

transfer law, which provided at the time of the 1990 Transfer as follows:

> All fraudulent conveyances ... made or contrived with intent to avoid any debt or duty belonging to others, shall, notwithstanding any pretended consideration therefor, be void as against those persons only ... to whom such debt or duty belongs.

C.G.S. § 52–552 (1990).[3]

3. In the instant case, Connecticut General Statutes § 52–552 provided the Trustee with no greater avoidance powers than he enjoyed under Code Section 548(a). Thus, the Court's discussion will be limited to its analysis of Section 548.

■ 4. The Plaintiff–Trustee has the initial and the ultimate burden of proof by a preponderance of the evidence on all of the elements of a fraudulent transfer, *see Rubin v. Manufacturers Hanover Trust Co.*, 661 F.2d 979, 993 (2d Cir.1981); although, as detailed below, the burden is assigned to the Defendants as to certain affirmative defenses.

5. The Plaintiff–Trustee has failed to satisfy his burden of proving that the 1990 Transfer was motivated by an intent to "hinder, delay, or defraud any entity" within the meaning of subsection (a)(1) of Section 548.

6. As to the elements of Subsection (a)(2)—the so-called "constructive fraud" aspect of Section 548—this Court concludes that the Plaintiff has presented a *prima facie* case under that subsection, having initially established through documentary and testimonial evidence the following:

a. that the 1990 Transfer was a transfer of an "interest of the debtor in property", in that the Debtor was the legal title-holder to the Property immediately prior to the 1990 Transfer, 11 U.S.C. § 548(a);

b. that the 1990 Transfer was made or incurred on or within one year before the date of the filing of the involuntary petition against the Debtor, *id.;*

c. that the Debtor was "insolvent" on the date on which the 1990 Transfer was

made, or that he became insolvent as a result of that transfer, 11 U.S.C. § 548(a)(2)(B)(i); and

d. that at the time of the 1990 Transfer the Debtor received no consideration, and thus received "less than a reasonably equivalent value in exchange for" the 1990 Transfer, 11 U.S.C. § 548(a)(2)(A).

7. Despite these conclusions, the Defendants assert as an affirmative defense in equity that the Debtor was never the true *beneficial* owner of the Property, having acquired through the *1989 Transfer* only bare *legal* title as the trustee of a "resulting trust". In essence the Defendants appear to assert, in the words of Section 548, that the Debtor never had "an interest ... in [the] [P]roperty." More accurately perhaps, they might concede that the Debtor had a technical "interest", but that such interest—bare legal title as a trustee—was valueless, and thus the 1990 conveyance of that bare interest back to Carlo, while absent consideration, was indeed for "reasonably equivalent value."

8. The essence of a resulting trust is the "disposition of property under circumstances which raise an inference that ... [the grantor] does not intend that the person taking or holding the property should have the beneficial interest therein ...." Restatement (2d) Trusts § 404 (1959).

■ 9. Despite the ultimate burden of persuasion resting on the Plaintiff–Trustee, the party seeking to establish the existence of a resulting trust has the burden of proving the facts necessary to raise a presumption of a resulting trust relationship. *See Farrah v. Farrah*, 187 Conn. 495, 501, 446 A.2d 1075, 1078 (1982).

10. Traditionally, Connecticut courts have employed resulting trust principles under three specific factual scenarios. The scenario with potential application to the case at bar—the so-called "purchase-money" scenario—was described by the Connecticut Supreme Court in the case of *Ward v. Ward*, to wit:

---

**3.** This statute was repealed in 1991 by P.A. 91–297, § 13, and replaced by Connecticut's version

of the Uniform Fraudulent Transfer Act, C.G.S. § 52–552a to 52–552*l.*

Resulting trusts ... arise, notably, when the purchase money for property is paid by one and the legal title is taken in the name of another. In such a case a trust arises at once in favor of the person paying the money, and the holder of the legal title becomes a trustee for him. This result follows the natural presumption that a purchase will inure to him who furnishes the purchase price....

*Ward v. Ward,* 59 Conn. 188, 195, 22 A. 149, 150 (1890).

■ 11. Plainly, the circumstances of the 1989 Transfer do not mirror the paradigm of a "purchase money" resulting trust as described in *Ward.* The Debtor did not receive legal title to the Property *at the time* that Carlo originally "purchased" the Property. Rather, Carlo acquired legal title and beneficial ownership of the Property first, and only later transferred legal title to the Debtor. Some courts have considered similar distinctions to be dispositive against the implication of a resulting trust. *E.g., Guy v. Guy,* 104 N.C.App. 753, 411 S.E.2d 403, 405 (1991). Consequently, this Court takes some pause before applying resulting trust principles to the factual circumstances of this case. Nonetheless, this is a court of equity; and an implied trust, such as a resulting trust, is a creature of equity. As such, its principles should be flexibly applied to accomplish the equitable goals for which it was initially devised.

■ 12. This Court finds and concludes that the 1989 Transfer was a "disposition of property under circumstances which raise an inference that ... [Carlo did] not intend that [the Debtor] ... have the beneficial interest therein." Restatement (2d) Trusts § 404 (1959). Thus, a resulting trust arose in favor of Carlo at the time of the 1989 Transfer, and at that time the Debtor became the trustee of Carlo's beneficial interest in the Property.

■ 13. However, the determinations of ¶ B. 12 of these Conclusions of Law do not necessarily end the inquiry. The Debtor's

status as a resulting trustee with respect to Carlo's beneficial interest in the Property does not preclude the Debtor from having an interest of his own in that same property— one which he could later convey for less than reasonably equivalent value. *Cf., e.g., Lacey v. Van Royen,* 259 Md. 80, 267 A.2d 91, 93–96 (1970). As a matter of fact, the Debtor had at least two distinct interests in the Property immediately prior to the 1990 Transfer, namely:

a. The Debtor held legal title to the Property. Yet, because a resulting trustee has an absolute duty to reconvey legal title to the beneficial owner upon demand, *see, e.g., Matter of Hulk,* 8 B.R. 444, 447 (Bankr.D.Conn.1981), bare legal title is not an interest of any value to the Debtor, or to his bankruptcy estate upon a putative avoidance and recovery of such bare legal title.[4]

b. By contrast, the other interest the Debtor held in the Property *was* of value to the Debtor and his then-existing creditors. That interest was in the form of a contingent and unliquidated equitable lien. It sprang from the valuable credit accommodation which the Debtor provided to Carlo in 1989. Specifically, at the time of the 1989 Transfer the Debtor became personally obligated to Community in the amount of $150,000.00. Because that accommodation immediately exhausted some of the Debtor's credit capacity, and exposed the claims of his then-existing creditors to dilution, equity would compel the implication of an equitable security interest in the Property in favor of the Debtor to secure his credit accommodation of Carlo. *Cf., e.g., Farrah,* 187 Conn. at 501, 446 A.2d 1075; *Murphy v. McKenzie,* 1 Mass. App.Ct. 553, 303 N.E.2d 744, 746, 749 (1973). For instance, if, prior to the commencement of the Debtor's bankruptcy case, the Note had fallen into default *and* Community declined to foreclose its Mortgage on the Property[5], but instead pur-

---

4. Indeed, holding bare legal title could create liabilities for the Debtor's bankruptcy estate, such as obligations for real property tax liabilities, *inter alia.*

5. Although it would be unusual for a secured creditor to forego foreclosure, environmental concerns, *inter alia,* might lead a creditor to abandon its security interest and pursue a debtor solely on a promissory note.

sued the Debtor personally for repayment of the Loan, equity should entitle the Debtor to look to the Property for reimbursement.[6]

14. Thus, even with due regard for Carlo's beneficial interest via a resulting trust, the Debtor's equitable lien, encumbering that beneficial interest, was still an "interest in property", within the meaning of Section 548(a), which the Debtor transferred by quitclaim deed in the 1990 Transfer. Accordingly the Plaintiff–Trustee has established the voidability of the Debtor's transfer of his contingent equitable lien.

**C. Recovery.**

█ Having concluded that the equitable lien aspect of the 1990 Transfer is avoidable, this Court must turn to a consideration of what recovery, if any, can be had from either or both of the Defendants.

1. Under the Bankruptcy Code, avoidance action recoveries are governed by Code Section 550. That Section provided in relevant part as follows:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under sections 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under subsection (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

(c) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

\*　\*　\*　\*　\*　\*

11 U.S.C. § 550 (1990).

2. As concluded in ¶ B. 14 of these Conclusions of Law, the 1990 Transfer is voidable "to the extent" of the Debtor's transfer of his equitable lien rights.

3. In connection with the 1990 Transfer, Carlo was the "initial transferee" within the meaning of Section 550(a)(1). Thus, under the terms of Section 550(a), the Debtor's equitable lien rights in the Property—or their value—are recoverable from Carlo.

4. In connection with the 1990 Transfer, Marilou was an "immediate or mediate transferee" within the meaning of Section 550(a)(2). Thus, the Debtor's equitable lien rights in the Property—or their value—are recoverable from Marilou, but, under the terms of Section 550(b), only if she "t[ook] for value ... and without knowledge of the voidability of the transfer avoided".

5. It is unnecessary for the Court to analyze whether Marilou took her interest in the Property "for value ... and without knowledge of the voidability" of the 1990 Transfer because she is shielded from recovery by an even more fundamental defense—satisfaction. Her refinancing pay-off of the Debtor's obligation on the Note released the Debtor, and his future bankruptcy estate, from that personal obligation, and dissolved the underlying basis for the Debtor's equitable lien rights in the Property. Ironically, under this analysis, the Plaintiff–Trustee's avoidance action was satisfied before it was ever commenced.

6. Because Marilou has fully satisfied the Debtor's bankruptcy estate to the extent of its legitimate avoidance, and because the Plaintiff–Trustee is entitled to only a single satisfaction under 11 U.S.C. § 550(c), recovery from Carlo is likewise inappropriate.

**V. CONCLUSION.**

For the foregoing reasons, judgment shall enter in this adversary proceeding in favor of the Defendants.

---

**6.** The doctrines of subrogation, *inter alia,* would compel this result.

## JUDGMENT

This adversary proceeding having come on for trial; the Court having received the evidence and the arguments of the parties; and the Court having this day issued its *Findings of Fact and Conclusions of Law on Complaint to Avoid Transfers of Property,* in accordance with which it is

ORDERED that judgment shall enter in this adversary proceeding in favor of the Defendants.