In re CYBRIDGE CORP., Debtor.

Andrea Dobin, Trustee, Appellant/Cross–Appellee,

v.

Presidential Financial Corporation of Delaware Valley, Appellee/Cross–Appellant.

Bankruptcy No. 01–62337 (RTL).
Civ. No. 04–1345 (MLC).

United States District Court, D. New Jersey.

June 24, 2004.

Andrea Dobin and Valerie A. Hamilton, Sterns & Weinroth, P.C., Trenton, N.J., for Appellant/Cross–Appellee.

Stephen M. Packman and Jerrold S. Kulback, Archer & Green, P.C., Haddonfield, N.J., for Appellee/Cross–Appellant.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court on the appeal by Andrea Dobin, Trustee ("the Trustee") and cross-appeal by Presidential Financial Corporation of Delaware Valley ("Presidential") of, *inter alia*, the Bankruptcy Court's February 19, 2004, order granting the Trustee summary judgment and ordering relief of $0.00 ("2–19–04 Order").[1] The Trustee asserts, *inter alia*, that the portion of the 2–19–04 Order granting Presidential a credit of $163,847.00 should be reversed or vacated. Presidential rejoins, *inter alia*, that the

---

1. Presidential also cross-appeals several orders of the Bankruptcy Court denying its motion for *nunc pro tunc* approval of its post-petition financing agreement with the debtor in the bankruptcy proceedings below. (Pres. Br. at 2; Trus. Br. at 1.) Presidential has indicated, however, that it does not wish to appeal those orders if the Court affirms the 2–

credit is valid under both 11 U.S.C. § 550(d) and 11 U.S.C. § 105(a).[2] For the reasons stated herein, we will affirm the 2–19–04 Order in its entirety.

## BACKGROUND

This appeal arises out of the bankruptcy case *In re Cybridge Corp.*, 01–62337(RTL). We rely on the facts as set forth in the February 18, 2004, opinion of the Bankruptcy Court ("2–18–04 Opinion").[3] Cybridge Corporation ("the Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code ("the Code") on October 31, 2001, and administered the estate as the Debtor–in–Possession. (2–18–04 Op. at 3.) The case was converted to Chapter 7 on April 3, 2002, and Andrea Dobin was appointed Trustee. (*Id.*)

Presidential and the Debtor had entered into a financing agreement in June 2000 ("the Agreement"). (*Id.*) The Agreement was what is commonly known as a "factoring" agreement: Presidential advanced the Debtor loans worth up to eighty percent of the Debtor's accounts receivable, secured by a first priority security interest in, *inter alia,* the Debtor's accounts receivable. (*Id.*) When those accounts receivable came due, the Debtor's customers would pay Presidential directly. (*Id.* at 4.) Presidential would deposit the funds into a bank account, and the bank would sweep the funds from Presidential's account to apply to the debt. (*Id.*)

The Debtor did not list Presidential as a creditor on the Debtor's schedules when it filed for Chapter 11 on October 31, 2001. (*Id.*) Nor did the Debtor give Presidential notice of the petition. (*Id.*) Accordingly, due to the Debtor's obfuscation of its bankruptcy, Presidential continued to advance the Debtor money pursuant to the Agreement, and to collect on the Debtor's accounts receivable. (*Id.*)

Presidential first learned of the Debtor's bankruptcy case on April 19, 2002, after the case had been converted to Chapter 7. (*Id.*) The Trustee sent Presidential formal notice of the bankruptcy by letter dated May 1, 2002. (*Id.*) Meanwhile, Presidential had collected $163,847.00 in payments from the Debtor's customers, in the period from December 20, 2001, through May 8, 2002.[4] (*Id.*) Also during that period, Presidential advanced the Debtor $192,200.00 in new, post-petition loans. (*Id.*)

The Trustee demanded in May 2002 that Presidential turn over the $163,847.00 it had collected. (Pres. Br. at 7.) In response, Presidential filed a motion seeking *nunc pro tunc* approval of the Agreement under 11 U.S.C. § 364. (2–18–04 Op. at 4.) The Trustee then cross-moved for turnover of the funds under 11 U.S.C. § 542. (Trus. Br. at 4.) The motions were denied, both initially and on reconsideration. (2–18–04 Op. at 5.)

19–04 Order in its entirety. (Pres. Br. at 21, 49.) Because we hold, *infra,* that the 2–19–04 Order should be affirmed in its entirety, we do not reach Presidential's appeal of these other orders.

2. In the event that the Court were to find the Bankruptcy Court erred in granting Presidential a credit, the parties raise several issues pertaining to other aspects of the 2–19–04 Order. (Pres. Br. at 2; Trus. Br. at 1.) Because we hold, *infra,* that the Bankruptcy Court did not so err, those arguments are moot.

3. The 2–18–04 Opinion addressed cross-motions for summary judgment by the Trustee and Presidential. The Bankruptcy Court found there were no material facts in dispute. (2–18–04 Op. at 5.) The parties have not appealed that determination.

4. Presidential collected $152,803.75 from the Debtor's customers in the period from November 1, 2001, through December 19, 2001. (2–18–04 Op. at 4.) The Trustee did not seek to avoid those transfers, however. (*Id.* at 4 n. 2.)

The Trustee filed an adversary proceeding against Presidential on August 30, 2002. (Trus. Br. at 4.) The complaint sought to avoid the post-petition transfer of estate property under 11 U.S.C. § 549, or, in the alternative, turnover under Section 542. (2–18–04 Op. at 5.) The parties cross-moved for summary judgment on both counts. (*Id.*) The Bankruptcy Court issued an opinion on February 18, 2004, and an order the following day.

The Bankruptcy Court granted summary judgment to the Trustee on avoidance.[5] (*Id.* at 6–10.) It held that the financing arrangement set out in the Agreement, wherein the Debtor granted Presidential a security interest in estate assets in exchange for the extension of credit, was avoidable under Section 549(a). (*Id.* at 6.) It further held that the Agreement did not meet any of the exceptions to avoidance enumerated by the Code. (*Id.* at 6–10.)

The Bankruptcy Court also held, however, that the Trustee's recovery on the avoidance should be zero. We quote the Bankruptcy Court's ruling on this point in its entirety, as the propriety of its reasoning is the focus of this appeal:

If the Trustee were seeking to avoid a postpetition transfer of tangible personal property, her suit would become moot once the property was returned. For example, suppose the debtor had transferred a car to an employee after it filed bankruptcy. If the employee subsequently gave the car back, there would be no need for a Trustee's suit once the employee returned the car. A similar result should follow where the avoided postpetition transfer involves cash. A transferee who receives an avoidable postpetition cash transfer should have no further liability once it gives the cash back.

In this case, Presidential received $167,414.44 [6] in avoidable collections of postpetition receivables. However, Presidential transferred $192,200.00 to the Debtor postpetition in the form of new loans. Cash is fungible. Presidential's postpetition loans were equivalent to giving back the proceeds of the avoidable collection of postpetition receivables. The amount given back to the Debtor exceeds the amount of postpetition receivables collected by Presidential. Thus, the net amount of the avoided transfer is zero.

The Trustee objects to a credit against the recovery and suggests Presidential should be given a chapter 11 administrative claim for its postpetition loans. Allowing Presidential a credit for money given to the Debtor in new, postpetition loans, in effect yields a result advocated by the Commission on the Bankruptcy Law of the United States. "Postpetition transferees giving a reasonably equivalent present value would be protected...." Report of the Commission [on the Bankruptcy Laws of the United States, July 1973, 93d Cong., 1st Sess., House Doc. No. 93–137, Parts I and II]. Of course, Congress adopted the Commission's recommendation only for real property, not for personal property. So, is allowing the credit contrary to Congress's intent?

Not necessarily. As stated, cash is fungible and allowing the credit merely recognizes that Presidential has already returned that which the Trustee seeks. Secondly, Presidential's postpetition loans were made to the Debtor in Possession, a fiduciary with all the powers of a Trustee. [11 U.S.C.] § 1107(a).

---

**5.** The Bankruptcy Court therefore did not reach the turnover claim. (2–18–04 Op. at 10.)

**6.** This sum differs from the $163,847.00 amount listed *supra* by $3,567.44. The source of this discrepancy is unclear.

Cybridge used the funds to operate its business postpetition, as it was authorized to do. [11 U.S.C.] § 1108. The assets removed from the estate by Presidential's collection of postpetition receivables were replenished by postpetition loans.[7]

Lastly, Congress protects good faith purchasers of real property by making such transfers unavoidable. In this case, the Trustee may avoid the collection of postpetition receivables, so Congress's decision not to exempt transfers of personal property is respected. The credit merely recognizes that the estate's property has been restored whether the payback occurs before or after the Trustee commenced suit.

. . .

The Trustee is entitled to avoid Presidential's collection of the Debtor's accounts receivable attributable to postpetition ... services under § 549(a) and recover the value in the amount of $163,847.00 from Presidential under [11 U.S.C.] § 550(a)(1). However, Presidential is equitably entitled to a credit for the cash it transferred back to the Debtor in the form of postpetition loans in the amount of $192,200.00. Since the credit exceeds the value of the avoided transfer, the net recovery is zero. Judgment will be entered finding the plaintiff entitled to no recovery.

(*Id.* at 16–18.)

### DISCUSSION

### I. *Legal Principles*

#### a. *Jurisdiction and Standard of Review*

■ We have appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees. 28 U.S.C. § 158(a).

We review the Bankruptcy Court's "findings of fact for clear error, its conclusions of law *de novo*, and its exercises of discretion for abuse of discretion." *In re Response U.S.A., Inc.,* 288 B.R. 88, 92 (D.N.J. 2003).

#### b. *The Debtor–in–Possession and the Trustee*

■ Section 1107(a) of the Code provides that Chapter 11 debtors-in-possession maintain essentially the same rights and powers as do trustees appointed by the bankruptcy court to administer the estate. *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery,* 330 F.3d 548, 558 n. 4 (3d Cir.2003) *("Cybergenics")* ("[S]ection 1107 gives Chapter 11 debtors-in-possession all powers normally associated with trustees in the usual event that no trustee is appointed."). The acts of a debtor-in-possession are generally binding upon a subsequently-appointed trustee. *Armstrong v. Norwest Bank, Minneapolis, N.A.,* 964 F.2d 797, 801 (8th Cir.1992) ("[I]t is axiomatic that the Trustee is bound by the acts of the debtor-in-possession."). *See also In re Great N. Paper, Inc.,* 299 B.R. 1, 5 (D.Me.2003); *In re Phila. Athletic Club, Inc.,* 17 B.R. 345, 347 (Bankr.E.D.Pa.1982). "Upon conversion [from Chapter 11 to Chapter 7] and appointment, a trustee steps into the shoes of the debtor-in-possession with respect to all rights, responsibilities and liabilities." *Official Unsecured Creditors' Comm. v. Rachles (In re S. Rachles, Inc.),* 131 B.R. 782, 785 (Bankr.D.N.J.1991).

#### c. *Liability of Transferee of Avoided Transactions*

■ Section 550 of the Code states, in pertinent part:

---

7. "A credit might not be appropriate in all circumstances. For example, in a chapter 7 case, if new loans were given to a debtor and dissipated, a credit might not be allowed." (Footnote in original.)

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section ... 549 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer ...; or

(2) any immediate or mediate transferee of such initial transferee.

. . .

(d) The trustee is entitled to only a single satisfaction under subsection (a) of this section.[8]

"The purpose of Section 550 is to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred." *In re Am. Way Serv. Corp.*, 229 B.R. 496, 530–31 (Bankr.S.D.Fla.1999) (quotations and citations omitted). *See also Morris v. Kan. Drywall Supply Co. (In re Classic Drywall, Inc.)*, 127 B.R. 874, 876 (D.Kan.1991) (stating same).

Section 550(d) limits the recovery authorized by Section 550(a) by restricting the trustee to a "single satisfaction" under that subsection. *In re Princeton–New York Investors, Inc.*, 255 B.R. 376, 384 (Bankr.D.N.J.2000). *See also In re Am. Way Serv.*, 229 B.R. at 531 (observing that the flexibility § 550(a) gives a court is limited by § 550(d)'s prohibition of multiple recovery). Section 550(d) normally arises in scenarios where Section 550(a) enables the trustee to recover from more than one transferee, possibly allowing the

trustee to recover more than the value of the avoided transfer. *See, e.g., Harrison v. Brent Towing Co. (In re H & S Transp. Co.)*, 110 B.R. 827, 832 (M.D.Tenn.1990) (holding that since trustee had already recovered as against one transferee, "[t]o allow recovery also from [two other transferees] would amount to two satisfactions of a single transfer").[9]

The prohibition on multiple recoveries has also been invoked to prevent the trustee from recovering twice from a single transferee under Section 550(a). For example, in *Meeks v. Greenville Casino Partners, L.P. (In re Armstrong)*, 217 B.R. 569 (Bankr.E.D.Ark.1998), the trustee sought to avoid transfers from the debtor to a casino under theories that the transfers constituted, *inter alia*, actual fraud (Count I of the complaint) and preferences (Count IV of complaint). *Id.* at 573–77, 578–79. The court first held that the trustee could avoid some of the transfers as fraudulent, and awarded the trustee $160,000 on Count I. *Id.* at 577. The court then held that some of the transfers could also be avoided as preferences, and granted judgment to the trustee on Count IV. *Id.* at 579. However, because some of the preference transfers were the same as those the court had held avoidable as fraudulent, the court held the trustee could not recover from the casino the full amount of the preference transfers:

Accordingly, the trustee is entitled to recovery on Count IV of the complaint in the amount of $57,500 [under

---

**8.** The language in subsection (d) was originally found in subsection (c). When a new subsection (c) was added to Section 550 in 1994, this part of the statute was moved to subsection (d). *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 202 (1994).

**9.** Such a context appears to have been the motivating factor behind the passage of the statute. Both the House and Senate reports

on the Bankruptcy Reform Act of 1978 state: "Subsection (c) is a further limitation on recovery. It specifies that the trustee is entitled to only one satisfactory [sic], under subsection (a), even if more than one transferee is liable." H.R.Rep. No. 595, 95th Cong., 2d Sess. 375–76 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 90 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6332, 5787, 5876.

§ 550(a)]. Of course, since the trustee may not have a double recovery, 11 U.S.C. § 550(d), and $28,000 of this amount is included in the trustee's recovery under Count I of the complaint, the total collection may not exceed the maximum amount of these avoidable transfers. The remainder, $29,500, however, is recoverable in addition to the $160,000 under Count I of the complaint. *Id.*

### d. *The Bankruptcy Court's Equitable Powers*

Bankruptcy courts have long possessed equity jurisdiction in order to safeguard against unjust results.

> The bankruptcy courts have exercised these equitable powers in passing on a wide range of problems arising out of the administration of bankrupt estates. They have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.

*Pepper v. Litton*, 308 U.S. 295, 304–05, 60 S.Ct. 238, 84 L.Ed. 281 (1939) (footnote omitted). While the enactment of the Code in 1978 imposed limits on these powers, "it did not alter bankruptcy courts' fundamental nature" as courts of equity. *Cybergenics*, 330 F.3d at 567.

Section 105(a) of the Code states, in pertinent part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." This section has been interpreted to mean that while the bankruptcy courts maintain their traditional equitable powers, that jurisdiction "must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). That is, courts may not use their Section 105(a) powers "to authorize any relief that is prohibited by another provision of the Code." *In re Transit Group, Inc.,* 286 B.R. 811, 815–16 (Bankr.M.D.Fla.2002) (considering whether exercising § 105(a) equitable powers conflicted with 11 U.S.C. § 524(e)). *See also In re Lodge Am., Inc.,* 259 B.R. 728, 734–35 (D.Kan.2001) (affirming bankruptcy court's refusal to exercise its equitable powers because doing so "would be inconsistent with the specific provisions of § 364 of the Code").

## II. *The 2–19–04 Order*

The Bankruptcy Court held that the Trustee was entitled to avoid Presidential's post-petition collections of the Debtor's accounts receivable under Section 549, because such collections constituted unauthorized transfers of the property of the estate. The court also held that Section 550(a) permitted the Trustee to recover the full amount collected by Presidential: $163,847.00. The Bankruptcy Court further held, however, that the actual recovery to which the Trustee was entitled was zero, because Presidential was entitled to a credit of $192,200.00 on account of the loans it had made to the Debtor when it was the Debtor–in–Possession.

The issue on this appeal is whether the Bankruptcy Court's ruling that Presidential is entitled to a credit is in error. Put differently, the issue here is: Does the Bankruptcy Code empower a court to avoid a post-petition transfer of estate property and permit the trustee to recover the property or value thereof, but then grant the transferee a credit on the grounds that it has already returned the property to the estate? We hold that the Code does so empower courts, either explicitly under 11 U.S.C. § 550(d), or as a permissible exercise of equitable power under 11 U.S.C. § 105(a).

The Bankruptcy Court did not specify whether it was acting under Section 550(d) or Section 105(a). On the one hand, the implication of the 2–18–04 Opinion is that the Trustee cannot recover the $163,847.00 because the Trustee's predecessor in interest, the Debtor–in–Possession, has already recouped this money. That is, the Bankruptcy Court appears to hold that to allow the Trustee to recover the money would be to allow a second satisfaction under Section 550(a), in violation of Section 550(d). On the other hand, the court concludes its opinion: "Presidential is equitably entitled to a credit", thus apparently invoking its equitable powers under Section 105(a). (2–18–04 Op. at 18.) This ambiguity is irrelevant, however, because we hold that the Bankruptcy Court's order was appropriate under either section of the Code.

### a. *Section 550(d) Analysis*

Section 550(d), as noted *supra,* generally arises in contexts where the trustee has already recovered at least a partial satisfaction under Section 550(a) from one transferee of an avoided transaction, and then seeks to obtain further recovery from a second eligible transferee. The situation presented on this appeal, where the trustee seeks to recoup under Section 550(a) from a party that the Bankruptcy Court has held has already returned the property to the estate, does not appear to have been the subject of any reported cases. Neither the parties, nor the Court, have uncovered such an opinion.

The plain language of the statute, though, favors affirming the Bankruptcy Court's approach. Section 550(d) states: "The trustee is entitled to only a single satisfaction under subsection (a) ·of this section." The Bankruptcy Court held that the Trustee's recovery under Section 550(a) is $163,847.00. The court further held that the estate had already been paid more than $163,847.00 by Presidential. Thus, if the Trustee were permitted to recover $163,847.00 more from Presidential, it would be obtaining for the estate a second satisfaction of the recovery permitted under Section 550(a).

The legislative history of Section 550(d) does not counsel against this result. The House and Senate Reports accompanying the Bankruptcy Reform Act of 1978 had little to say about Section 550(d): "Subsection (c) is a further limitation on recovery. It specifies that the trustee is entitled to only one satisfactory [sic], under subsection (a), even if more than one transferee is liable." H.R.Rep. No. 595, 95th Cong., 2d Sess. 375–76 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 90 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6332, 5787, 5876.

We also find that policy considerations favor the approach taken by the Bankruptcy Court. Under the theory espoused by the Trustee, a curious result could occur. Rather than alerting their creditors to a Chapter 11 filing, debtors-in-possession that are parties to pre-petition factoring agreements could go on obtaining "secured" loans from their creditors in exchange for allowing such creditors to collect on their accounts receivable. Then, in the event the Chapter 11 petition is converted to Chapter 7 and a trustee is appointed, the trustee could avoid all of the accounts-receivable transfers, recover the money collected by the factoring creditors—and still keep for the estate the money loaned by the unsuspecting creditors! The result would be a windfall for the estate and the other creditors, whose shares of the estate would be higher than in the absence of the debtor's malfeasance. We do not believe this perverse result is the aim of the Code. The purpose of Section 550 is to make the estate whole. Here, the estate is already whole: that

which was taken out by Presidential ($163,847.00) was already put back in.

■ We hold, therefore, that Section 550(d) of the Code empowers courts to prohibit a trustee from recovering under Section 550(a) from a transferee that has already returned to the estate that which was taken in violation of the Code.

■ The above analysis, however, does not end the inquiry: while we have just held that the Bankruptcy Court has the *power* to hold that Presidential had previously satisfied the judgment owed the Trustee, we still must consider whether the Bankruptcy Court was correct in concluding that Presidential *had in fact satisfied* the judgment. The parties dispute this issue vigorously in their briefs. The Trustee contends that the dispositive issue is the accounts receivable, which wrongly flowed out of the estate and into Presidential's hands, and which therefore must be returned under Section 550(a). What Presidential gave in return, the Trustee argues, is irrelevant. Presidential rejoins that cash is cash: it may have taken accounts receivable from the estate, but those accounts were only of value once collected on, at which time they became cash. Presidential put more cash back into the estate (via transfers made to the then-Debtor-in-Possession) than it took out. Since there is no difference between Presidential's dollars and those of the estate, it argues, the Bankruptcy Court was therefore correct to hold that the Trustee's claim against it for $163,847.00 had already been satisfied.

We agree with Presidential. Cash is fungible. *See United States v. Sperry Corp.*, 493 U.S. 52, 62 n. 9, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989) ("It is artificial to view deductions of a percentage of a monetary award as physical appropriations of property. Unlike real or personal property, money is fungible."); *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 195 (3d Cir.1990) ("Legally as well as economically, money is fungible."). The Trustee's attempt to characterize the issue in terms of the estate's property interest in the accounts receivable is a red herring—those accounts are only valuable once they are reduced to cash (which, of course, is what Presidential did with them). As the Bankruptcy Court observed, this situation—cash in, cash out—is no different than if the then-Debtor-in-Possession had given Presidential an automobile, and Presidential had then returned it to the estate before the Trustee brought an action to avoid that transfer.

■ It is undisputed that Presidential gave the Debtor, who was at the time the Debtor–in–Possession, $192,200.00 in cash during the relevant period. It is also undisputed that during the same period Presidential collected $163,847.00 in cash from accounts receivable that belonged to the estate. The Bankruptcy Court held that the net result of this transaction was that Presidential had already paid the sum that the Trustee would later seek in the avoidance proceeding, because there is no difference between the cash Presidential took in (by collecting on the accounts receivable) and the cash Presidential gave out (by giving money to the Debtor, who as the Debtor–in–Possession at the time was the Trustee's predecessor in interest). *See* 2–18–04 Op. at 18 ("[T]he estate's property has been restored whether the payback occurs before or after the Trustee commenced suit."). On these facts, we hold that the Bankruptcy Court's conclusion that the Trustee's right to recover under Section 550(a) had already been satisfied by Presidential's transfers to the Debtor–

in–Possession must be affirmed.[10]

### b. *Section 105(a) Analysis*

■ Section 105(a), as discussed *supra*, allows bankruptcy courts to do equity so long as the exercise thereof does not conflict with any specific provisions of the Code. Thus, the parties agree the Bankruptcy Court had the power under Section 105(a) to grant Presidential an equitable credit of \$163,847.00, unless that grant ran contrary to the Code. (Trus. Rep. Br. at 4; Pres. Br. at 15.) The Trustee, however, contends that the relief granted by the Bankruptcy Court runs afoul of two provisions: Section 549 and 11 U.S.C. § 726.

■ Section 549 permits the trustee to avoid certain postpetition transfers. The Trustee asserts that granting an equitable credit to Presidential in effect grants Presidential a new defense to her avoiding powers, in contravention of that section. This argument, however, misunderstands the relief granted by the Bankruptcy Court. The court applied Section 549 to avoid the post-petition transfer to Presidential, just as the section provides. The equitable credit has nothing to do with the Section 549 avoidance; rather, it concerns the Trustee's recovery under Section 550. Thus, the Trustee's Section 549 argument is inapposite.

■ The Trustee's Section 726 lament is similarly unavailing. Section 726 dictates how the property of the estate is to be distributed to the various creditors and claimants. The Trustee contends that the equitable credit circumvents Section 726 by in effect granting Presidential superpriority status with respect to \$163,847.00 of Presidential's \$192,200.00 claim against the estate. This perversion of Section 726's order of distribution, claims the Trustee, is unfair to those creditors of the estate whose claims should be paid before Presidential's, and who may now recover less than they are entitled to as a result.

This argument, despite its superficial appeal, fails for two reasons. First, the Bankruptcy Court has not held that Presidential has a claim under the Code to the \$192,200.00 it provided the then-Debtor-in-Possession. Thus, to assert that Presidential's "claim" is being paid first, in violation of Section 726, is to put the cart before the horse. Second, the Trustee's argument ignores the reality of Presidential's relationship with the estate. The contention that the 2–19–04 Order has disturbed the Section 726 distribution scheme presupposes that the equitable credit diminishes the estate. According to the Trustee, Presidential wrongly possesses \$163,847.00 of estate property, which must be returned so it can be distributed to the creditors. The Trustee forgets, however, that every penny Presidential took out has also been put back in. In fact, but for the then-Debtor-in-Possession's concealing the Chapter 11 petition from Presidential, the estate would have had \$28,353.00 *less* to distribute under Section 726 than it does now. Thus, the equitable credit given to Presidential will not disturb the distribution of the property of the estate mandated by Section 726.

■ We further find that the Bankruptcy Court's exercise of its Section 105(a) powers, rather than conflicting with the Code, actually furthers its aims. "It is not the objective of the bankruptcy laws to

---

**10.** We note, as did the Bankruptcy Court, that our holding would be different if Presidential's transfers had been made to a Chapter 7 debtor rather than a Chapter 11 debtor-in-possession. *See* n. 9 *supra*. Funds transferred to a Chapter 7 debtor might not be used for the benefit of the estate. Chapter 11 debtors-in-possession, on the other hand, have the same fiduciary duties to the estate as trustees.

confer windfalls on debtors." *In re Chicago, Milwaukee, St. Paul & P. R.R. Co.*, 791 F.2d 524, 527 (7th Cir.1986). Rather, the purpose of the recovery scheme mandated in Section 550 is to put the estate in the same position it would have been in but for the avoided transfer. As discussed *supra,* denying the Trustee any further recovery from Presidential achieves Section 550's goal, and avoids conferring a windfall on the estate.

▮▮▮▮▮ We hold, then, that Section 105(a) empowers bankruptcy courts to grant equitable credits to transferees of avoided postpetition transfers where doing so does not otherwise conflict with the Code. We further hold that the Bankruptcy Court did not abuse its discretion in granting Presidential a credit here. A bankruptcy court abuses its discretion when its ruling is based on an error of law or a misapplication of law to the facts. *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 122 (3d Cir.1999). Granting Presidential an equitable credit fulfilled the aims of the Code. Further, it avoided the injustice that would have resulted had Presidential been forced to pay the Trustee $163.847.00. Presidential was deceived into continuing its relationship with the Debtor post-petition. It advanced the then-Debtor-in-Possession $192,200.00 in loans, $28,353.00 of which it will likely never recoup. It has been forced to defend itself in bankruptcy proceedings, no doubt at considerable cost. Under these circumstances, we cannot say the Bankruptcy Court abused its discretion in using its Section 105(a) powers to grant Presidential an equitable credit.

### c. *Analogous Caselaw*

The Trustee argues that *Sapir v. C.P.Q. Colorchrome Corp. (In re Photo Promotion Assoc.)*, 881 F.2d 6 (2d Cir.1989), and *Musso v. Brooklyn Navy Yard Development Corp. (In re Westchester Tank Fabricators, Ltd.)*, 207 B.R. 391 (Bankr. E.D.N.Y.1997), require reversal of the 2–19-04 Order. In both of those cases, a trustee brought an adversary proceeding to avoid a post-petition transfer. The courts avoided the transfers, and then ordered the transferees to return the transferred property to the estate and "wait in line with the other . . . creditors" for payment of their claims. *Sapir,* 881 F.2d at 10; *Musso,* 207 B.R. at 401–03.

Those cases, however, differ from the case before us. In those cases, the estate did not transfer cash in exchange for cash. In *Sapir,* the transferee gave the debtor photograph processing services in exchange for accounts receivable. 881 F.2d at 7. In *Musso,* the debtor paid the transferee cash belonging to the estate in payment for past rent. 207 B.R. at 401. Thus, the relief ordered by the Bankruptcy Court here was not even a possibility in those cases: the property transferred among the parties was not fungible. Further, neither *Sapir* nor *Musso* focused on whether the trustee was entitled to recoup the property post-petition; the only issues were whether the transfers were avoidable, and what the priority would be of the claims the transferees had against the estate. *Sapir,* 881 F.2d at 8–11; *Musso,* 207 B.R. at 401–03.

The cases cited by the Trustee thus do not counsel in favor of overturning the 2–19-04 Order. Moreover, *Belford v. Cantavero (In re Bassett)*, 221 B.R. 49 (Bankr. D.Conn.1998), supports affirming the Bankruptcy Court's approach. In *Belford,* the trustee sought to avoid a pre-petition lien and recover under Section 550(a) from, *inter alia,* a subsequent transferee of the lien. *Id.* at 51–55. The court held that the lien was avoidable, and that the trustee could recover from the subsequent trans-

feree under Section 550(a) if the elements of Section 550(b) were met. *Id.* at 55.

The court further held, however, that it was unnecessary to analyze whether Section 550(b) was satisfied here because the subsequent transferee was "shielded from recovery by an even more fundamental defense—satisfaction." *Id.* Well before the trustee had commenced the avoidance action, the subsequent transferee had refinanced the lien in question, paying off the original obligation and thus dissolving the debtor's responsibility under the lien. *Id.* That which the trustee sought to recover— the lien on the estate's property—had already been returned, albeit inadvertently: "Ironically, under this analysis, the Plaintiff-Trustee's avoidance action was satisfied before it was ever commenced." *Id.*

The court in *Belford* did not specifically mention Sections 550(d) or 105(a). Nevertheless, its reasoning implicates both: to hold the subsequent transferee liable would be to permit a second satisfaction of the avoidance that the court held had already been satisfied, or would unjustly force the subsequent transferee to pay a judgment she had previously paid. Here, too, the 2–19–04 Order is justified under either section. To permit the Trustee to recoup $163,847.00 from Presidential would constitute a second satisfaction in violation of Section 550(d)—as in *Belford,* the Trustee's avoidance action was satisfied before it was ever commenced. And granting an equitable credit of $163,847.00 avoids conferring a windfall on the estate, furthers the purposes of Section 550, and protects Presidential from further harm above and beyond that previously inflicted on it by the Debtor's misbehavior.

### CONCLUSION

The Trustee appeals and Presidential cross-appeals from an order of the Bankruptcy Court. We have held that the order must be affirmed, either under 11 U.S.C. § 550(d) or 11 U.S.C. § 105(a). An appropriate Order and Judgment will accompany this Memorandum Opinion.