In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-1428

THE NOSTALGIA NETWORK, INC.,

*Plaintiff-Appellee,*

v.

BONNIE M. LOCKWOOD,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 C 2418—Charles R. Norgle, Sr., *Judge.*

ARGUED SEPTEMBER 27, 2002—DECIDED NOVEMBER 6, 2002

Before POSNER, RIPPLE, and MANION, *Circuit Judges.*

POSNER, *Circuit Judge.* Nostalgia Network filed this diversity suit against Bonnie Lockwood to recover more than $300,000 that she had received from her boyfriend Merrick Scott Rayle, who owes Nostalgia millions. The suit claims that the transfer to Lockwood was fraudulent, and if so then under the Uniform Fraudulent Transfer Act, in force both in Illinois and Indiana (the two states that are candidates to furnish the rules of decision in this diversity suit), Nostalgia is entitled to get the money back from Lockwood. 740 ILCS 160/8; Ind. Code § 32-18-2-17.

The district court granted summary judgment for Nostalgia on the ground that Rayle had committed constructive fraud ("fraud in law" as it is termed in the UFTA), and Lockwood appeals. The suit also charges actual fraud, "fraud in fact," but the judge did not rule on that charge; nor need we, though we note parenthetically that the evidence of actual fraud is overwhelming.

Rayle, a lawyer, provided legal services to Nostalgia in the early 1990s. Nostalgia sued him in California for legal malpractice in 1994, and in July of 1999 the court entered a default judgment against him for $3 million. Two years earlier he had transferred ownership of an account in an Indiana bank to himself and Lockwood as joint tenants, and in February 1999 he had transferred his interest as joint tenant, worth some $60,000, to Lockwood, who thus became the sole owner of the account. She gave no consideration for the transfer, or for checks that he endorsed to her and that she deposited in the account before and after the California judgment. By September of 1999 he had transferred to the account, and thus to her, a total of $343,000.

The following month, Nostalgia sued Rayle in an Indiana state court to enforce the California judgment, and it attached Lockwood's account (which Nostalgia at the time believed was still Rayle's account) in the Indiana bank. There was $36,000 left in the account and the Indiana court ruled that the money was Rayle's—or that if it was Lockwood's that it had been "transferred to Ms. Lockwood merely for the purpose of avoiding creditors"—and ordered it paid over to Nostalgia, which was done. Lockwood had not been named as a defendant in the Indiana suit.

Nostalgia then brought the present suit in Illinois, where Rayle and Lockwood live, seeking the difference

($307,000) between the amount that Rayle had transferred to Lockwood without consideration ($343,000) and the amount Nostalgia had recovered in the Indiana action ($36,000).

When a person transfers money or other property to another person without receiving anything in return, and the transferor is insolvent (or made insolvent by the transfer), the transfer is voidable even if there was no intent to hinder creditors. 740 ILCS 160/6(a); Ind. Code § 32-18-2-15; *In re Liquidation of MedCare HMO, Inc.*, 689 N.E.2d 374, 380 (Ill. App. 1997); *Fire Police City County Federal Credit Union v. Eagle*, 771 N.E.2d 1188, 1191 and n. 3 (Ind. App. 2002). The usual motive for such transfers *is* to hinder creditors, but that is difficult to prove and provided the transfer is indeed grauitous creditors are hurt and the recipient, having paid nothing for what he received, has no very appealing claim to keep the money. The situation is different if there was consideration for the transfer, that is, if it was not a gratuity but an exchange. For if the transferor received equivalent value—in a bona fide exchange, each party considers itself better off after than before—his creditors are not hurt and the recipient of the transfer, having paid for it, would be entitled to compensation if it were rescinded; so in the end the creditors wouldn't benefit from the rescission.

The transfers that Rayle made to the account that, previously his, then joint, became Lockwood's alone were gratuitous. Lockwood gave him nothing in return for the transfers—except a place to hide his assets from his creditors, such as Nostalgia; that is what makes this almost certainly a case of actual as well as constructive fraud.

But there is a complication: Lockwood used much, maybe most, of the money she got from Rayle to pay his personal and business expenses. To the extent that she did

this, she actually helped the creditors and the transfers to the account were washes. To see this, imagine that Rayle has $100,000, owes his creditors $200,000, and one day transfers $10,000 to the account and the next day withdraws the $10,000 and uses it to pay one of his creditors. The sequence of transfers would not make the creditors as a whole worse off. It is true that when in our hypothetical sequence he transferred the money to the account, he took it out of the reach of the creditors, who now had an expected deficit not of $100,000 (the $200,000 that they were owed minus $100,000, his assets) but of $110,000 ($200,000 - $90,000). But when he retransferred it the next day to one of the creditors he put the creditors as a whole in exactly the position that they had occupied on the eve of the first transfer, with an expected deficit once more of $100,000 ($190,000, what the creditors are owed after one of them is paid $10,000, minus $90,000, the debtor's assets after the two transfers). Of course the creditors would prefer that he not spend anything on his own consumption. But the point is only that unless creditors are fooled or otherwise impeded (as they may well be—and even if the creditors as a whole are not made any worse off by the asset shuffle, particular creditors, especially those who are secured or who otherwise enjoy a higher priority than other creditors, may lose a valuable entitlement because the debtor paid one of those other creditors first), it makes no difference whether he spends the money out of his own pocket or someone else's pocket.

This said, we think the inquiry should stop at the first stage of analysis, that is, should stop after it is determined that the transfer was not supported by consideration. If it was gratuitous, the fact that some or for that matter all of it may later have seeped back to the debtor does not legitimize the transfer. The statutes make this clear

("value [given for a transfer] does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person," 740 ILCS 160/4(a); see also Ind. Code § 32-18-2-13(a)), as does the case law, though it is sparse. See *In re Roti*, 271 B.R. 281, 297-98, 303-04 (Bankr. N.D. Ill. 2002); *In re Mussa*, 215 B.R. 158, 171-72 (Bankr. N.D. Ill. 1997); 5 *Collier on Bankruptcy* ¶ 548.05[1][b], pp. 548-38 to 548-39 (15th ed. 2002). A compelling reason for stopping at the first stage is that the seeping back of the transferred money or property to the transferor is strong evidence of actual fraud by him. It is one thing to make a gift; it is another to transfer money to someone whom you expect to retransfer it to you; the inescapable implication is that you are parking your money in a place where you hope your creditors won't know to look. See 740 ILCS 160/5(b)(1),(2); *In re Carlson*, 263 F.3d 748, 749-50 (7th Cir. 2001); *In re Roti, supra*, 271 B.R. at 297-99, 303; *In re Marshall*, 198 B.R. 705, 708 (Bankr. N.D. Ohio 1996); *In re Stevens*, 112 B.R. 175, 177 (Bankr. S.D. Tex. 1989). It didn't make any sense, in the absence of a desire to throw creditors off the scent, for Rayle to give money to Lockwood to give back to him for living expenses, rather than defraying the expenses directly out of a bank account of his own. For that matter, it didn't make any sense for Rayle to take his name off the formerly joint account with Lockwood when he intended to continue using the money in it, albeit now it would technically be Lockwood's money. Creditors were (or at least one creditor was) hindered quite literally because, as is apparent from the fact that Nostalgia did not at first realize that the account was no longer in Rayle's name, making Lockwood the custodian of the money required Nostalgia to find and sue another person besides Rayle, namely Lockwood.

Lockwood further argues, however, that the suit is barred by Indiana's principles of res judicata because of the judgment in Nostalgia's action to seize the balance in the account. (Indiana's preclusion principles govern here because the judgment was entered by an Indiana court; but there is nothing unique or unusual about its principles, at least so far as bears on this case.) Res judicata itself (claim preclusion) is clearly inapplicable. *Beavans v. Groff*, 5 N.E.2d 514, 516-17 (Ind. 1937); *Giffin v. Edwards*, 711 N.E.2d 35, 36-37 (Ind. App. 1999); *Kirk v. Monroe County Tire*, 585 N.E.2d 1366, 1369 (Ind. App. 1992). Otherwise a judgment creditor would be unable to use separate proceedings to seize property of the debtor that might be scattered all over the country, or for that matter the world. What sense would that make? And anyway Lockwood, having by cooperating in Rayle's "parking" scheme forced Nostalgia to bring a second suit, is equitably estopped to plead res judicata in order to block that suit. See *Warner Cable Communications, Inc. v. City of Niceville*, 581 So.2d 1352, 1355 (Fla. App. 1991).

But might not the doctrine of collateral estoppel apply if as Lockwood argues the Indiana state court determined that Rayle was the owner of the account? For if he was the owner, doesn't this mean that in transferring money to the account either directly or by endorsing checks to Lockwood for deposit in the account he was transferring the money to himself rather than to Lockwood, and so she was not the recipient of a fraudulent transfer? The court did not say, however, that Rayle was the owner of the *account*; it said that he was the owner of the *money* in the account. That ruling, far from being inconsistent with the ruling of the district court in the present case, is implicit in it. When a court deems a transfer fraudulent and orders the transferee to cough it up, it is ruling that the transfer is ineffectual; that the transferor failed actu-

ally to divest himself of ownership of the money transferred. The money in Lockwood's account thus was really Rayle's. He was the equitable owner, she merely the holder of bare legal title—and the current equitable owner of Rayle's assets, in succession to Rayle, is his creditor Nostalgia. See *Beavans v. Groff, supra*, 5 N.E.2d at 516-17; *Giffin v. Edwards, supra*, 711 N.E.2d at 36-37.

Lockwood's final appeal is to the doctrine of judicial estoppel, which forbids a party who has prevailed on one ground in a litigation to repudiate that ground in seeking additional relief in a subsequent suit. See *United Rural Electric Membership Corp. v. Indiana Michigan Power Co.*, 716 N.E.2d 1007, 1010-11 (Ind. App. 1999); *Wabash Grain, Inc. v. Smith*, 700 N.E.2d 234, 237-38 (Ind. App. 1998); *DeVito v. Chicago Park District*, 270 F.3d 532, 535 (7th Cir. 2001). Lockwood argues that Nostalgia, having won the Indiana suit by arguing that Rayle owned the bank account, should not now be heard to argue that, no, it was Lockwood who owned the account. What we have said scotches this argument. The issue was never who owned the account, but who owned the money in it, and Nostalgia has been consistent in arguing that Rayle did.

AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*