# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50335

United States Court of Appeals
Fifth Circuit

**FILED**

December 23, 2019

Lyle W. Cayce
Clerk

In the Matter of: CURTIS HAROLD DEBERRY,

> Debtor,

CHERI ANN WHITLOCK,

> Appellant,

v.

JOHN PATRICK LOWE,

> Appellee.

Appeal from the United States District Court
for the Western District of Texas

Before CLEMENT, DUNCAN, and OLDHAM, Circuit Judges.

ANDREW S. OLDHAM, Circuit Judge:

The Bankruptcy Code empowers a trustee to "avoid" certain pre-petition transactions and "recover" funds rightfully owed to the bankruptcy estate. The question presented is whether the trustee can *double*-recover funds that were already returned. The district and bankruptcy courts below said yes, disagreeing with every other court that has considered the question. We vacate and remand.

## I.

Curtis DeBerry owned a produce-distribution business in San Antonio. He filed a Chapter 7 bankruptcy petition in February 2014. He committed

No. 18-50335

bankruptcy fraud, so the district court sentenced him to 24 months in prison. Ours is not the criminal case, however. This is an adversary proceeding filed by the trustee of his bankruptcy estate, Appellee John Patrick Lowe ("the Trustee").

A.

A few months before Mr. DeBerry filed for bankruptcy, his wife, Kathy DeBerry (née Whitlock), opened a joint bank account at Wells Fargo with her sister-in-law, Appellant Cheri Whitlock. Mrs. DeBerry allegedly wanted to use the account to transfer money to her children, who were away at school. It's unclear why she needed a joint bank account with Ms. Whitlock to do that.

On August 26, 2013, Ms. Whitlock went with Mrs. DeBerry to open the account at a Wells Fargo branch. Mrs. DeBerry gave her a cashier's check for $275,000 withdrawn from the DeBerrys' joint account. Ms. Whitlock endorsed the check, and they deposited it in the new Wells Fargo account.

Three days later, Mrs. DeBerry removed herself from the Wells Fargo account, leaving it solely in Ms. Whitlock's name. Ms. Whitlock signed the form that made her the sole accountholder, but she attested that Mrs. DeBerry showed her only the signature pages when asking her for a signature. She did not know Mrs. DeBerry was removing herself from the account, and she "would have never signed a document permitting that to happen."

Ms. Whitlock explained that her sister-in-law was "always busy with work." "I didn't work at the time," Ms. Whitlock testified, "[s]o, she would ask me can you go sign this paper [at the bank] and I'd say, yeah, I'll pop in." She "never questioned why Kathy wasn't signing the[] documents" herself. "I was doing a favor for my sister-in-law and never asked," Ms. Whitlock testified.

The money didn't stay in the Wells Fargo account for long. Starting about a month after the sisters-in-law opened the account, the $275,000 was transferred out. On September 23, Ms. Whitlock wired $33,500 to The

No. 18-50335

International CC, LLC, with a notation for Chantel DeBerry (the DeBerrys' daughter). Ms. Whitlock said the transfer paid for Chantel's culinary school. That same day, Ms. Whitlock authorized an automatic transfer of $9,200 to Marla Bainbridge. Ms. Whitlock does not know who Marla Bainbridge is. Ms. Whitlock did not fill out the information on either of these transfer request forms—she testified she only signed them at Mrs. DeBerry's request.

On October 7, Ms. Whitlock signed the two wire transfers at the heart of this case. The first transferred $32,000 from the Wells Fargo account to Kathy DeBerry's personal bank account, which was in her name only. The second transferred $200,000 to an account owned by Mr. DeBerry's LLC, "MBC."[1] Ms. Whitlock testified that she signed the October 7 wire transfers, like the others, at Mrs. DeBerry's request and that she neither filled out the forms nor asked about their destinations or purposes.

Ms. Whitlock testified: "It never occurred to me to review the transfer request or the reasons why the transfers were being made. . . . Because the monies belonged to Kathy [DeBerry], I did not question what she wanted to do with [them]."

B.

The Trustee filed an adversary proceeding against Ms. Whitlock (and others) to avoid and recover the $275,000 as a fraudulent transfer. He settled with Chantel DeBerry, so the $33,500 transferred on September 23 is no longer at issue. That leaves $241,500. The Trustee argues Ms. Whitlock is liable for all $241,500 under 11 U.S.C. § 550, which allows a bankruptcy trustee to recover fraudulently transferred funds from transferees. Ms. Whitlock denies liability based on two arguments. First, she contends she is not a "transferee"

---

[1] The four transfers add up to $274,700, leaving $300 in the Wells Fargo account after October 7. The parties don't tell us what happened to the $300.

No. 18-50335

because the money really belonged to the DeBerrys all along; she was a "mere conduit." Second, she contends the $232,000 she transferred to MBC and Kathy DeBerry on October 7 were already returned to the debtor, so the Trustee cannot "recover" them again.

1.

To unwind a fraudulent transfer, the trustee must first "avoid" it. *See In re Picard*, 917 F.3d 85, 97 (2d Cir. 2019). The bankruptcy court concluded the DeBerrys' $275,000 transfer to Ms. Whitlock evidenced many of the "badges of fraud" that allow an inference of fraudulent intent by the transferor under both federal bankruptcy law and Texas law. *See Soza v. Hill (In re Soza)*, 542 F.3d 1060, 1067 (5th Cir. 2008). For example, the transfer was not supported by any consideration from Ms. Whitlock, Ms. Whitlock is a family member of the debtor, Mr. DeBerry retained some practical control over the funds, and Mr. DeBerry was "under great financial stress" at the time of the transfer. Based on these findings, the bankruptcy court concluded the Trustee could avoid the transfer. Ms. Whitlock concedes that the transfer is avoidable.

2.

"In fraudulent transfer actions, there is a distinction between avoiding the transaction and actually recovering the property or the value thereof." *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 703 (11th Cir. 2005); *see also Picard,* 917 F.3d at 97; *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 809 (9th Cir. 1994). A bankruptcy trustee can recover from certain transferees. *See* 11 U.S.C. § 550(a). To recover, the bankruptcy trustee must show the alleged transferee had dominion and control over the transferred funds. *See Sec. First Nat'l Bank v. Brunson (In re Coutee)*, 984 F.2d 138, 141 (5th Cir. 1993) (per curiam).

The bankruptcy court held Ms. Whitlock had dominion and control over the funds in the Wells Fargo account. The original $275,000 cashier's check

No. 18-50335

was made out to her, and she endorsed and deposited it. She became the "sole owner" of the Wells Fargo account once Kathy DeBerry was removed as an accountholder. And she executed each of the transfers to others. She may have followed Mrs. DeBerry's instructions, but there is no evidence she was legally obligated to do so. So the bankruptcy court held Ms. Whitlock was an "initial transferee" of an avoidable transfer subject to recovery under 11 U.S.C. § 550(a)(1).

3.

The final question before the bankruptcy court was whether recovery from Ms. Whitlock would give the Trustee an impermissible double recovery in violation of the "single-satisfaction rule." According to the Bankruptcy Code, "[t]he trustee is entitled to only a single satisfaction" for avoidable transactions that are subject to recovery under 11 U.S.C. § 550(a). *See id.* § 550(d). Splitting from every other court to consider the question, the bankruptcy court took the view that the single-satisfaction rule does not apply to funds that were returned prior to the petition date. So it entered judgment for the Trustee, holding Ms. Whitlock liable for the entire $241,500—including the $232,000 she transferred to Mrs. DeBerry and MBC on October 7, 2013.

Ms. Whitlock appealed to this Court. We review the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *First Nat'l Bank v. Crescent Elec. Supply Co.* (*In re Renaissance Hosp. Grand Prairie Inc.*), 713 F.3d 285, 294 (5th Cir. 2013).

II.

Ms. Whitlock raises two arguments on appeal. First, she says she is not a "transferee" under § 550(a). Second, even if she is a "transferee," Ms. Whitlock argues the Trustee cannot recover from her under § 550(d). We don't need to reach her first argument because her second is correct.

No. 18-50335

A.

Section 550(a) says the bankruptcy trustee can "recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property." The courts below held the Trustee can use 11 U.S.C. § 550(a) to "recover" property from a transferee *even if* she transferred it back to the debtor before bankruptcy.  Not so.

In matters of statutory interpretation, text is always the alpha. Here, it's also the omega. Section 550(a) permits the trustee to "recover" the property. To "recover" means "[t]o get back or regain in full or in equivalence." *Recover*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also* WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 2080 (2d ed. 1941) [hereinafter WEBSTER'S SECOND] (defining "recover" as "[t]o get or obtain again; to get renewed possession of"). Obtaining a duplicate of something is not getting it back; it's getting a windfall. Property that has already been returned cannot be "recovered" in any meaningful sense. And that principle defeats the Trustee's claims against Ms. Whitlock. Once the fraudulently transferred property has been returned, the bankruptcy trustee cannot "recover" it again using § 550(a).

B.

One way or another, every other court to consider the issue has agreed with our reading of the plain text. Many courts get there by way of § 550(d)'s single-satisfaction rule, reasoning the trustee is limited "to a single recovery for his . . . fraudulent transfer claim to ensure the bankruptcy estate is put back in its pre-transfer position but receives no windfall through the avoidance provisions." *Kapila v. SunTrust Mortg., Inc.* (*In re Pearlman*), 515 B.R. 887, 896 (Bankr. M.D. Fla. 2014). And "if the bankruptcy estate receives prepetition repayment of fraudulent transfers, then the estate, at filing, is in the same position it would have been in notwithstanding the transfers." *Id.* at 897; *see*

No. 18-50335

*also Grossman v. Bonefant* (*In re Bonefant*), No. 12-16482-JNF, Adv. P. No. 14-1143, 2016 WL 1238855, at \*8–9 (Bankr. D. Mass. Mar. 29, 2016); *Finkel v. Polichuk* (*In re Polichuk*), 506 B.R. 405, 435–36 (Bankr. E.D. Pa. 2014); *Lassman v. Patts* (*In re Patts*), 470 B.R. 234, 242 (Bankr. D. Mass. 2012); *Belford v. Cantavero* (*In re Bassett*), 221 B.R. 49, 55 (Bankr. D. Conn. 1998).

Other courts get there by way of the bankruptcy court's equitable powers. These include the Eleventh Circuit, which has concluded that bankruptcy courts have equitable discretion to adjust the trustee's recovery to prevent a windfall. *See Bakst v. Wetzel* (*In re Kingsley*), 518 F.3d 874, 877–78 (11th Cir. 2008) (per curiam); *see also Dobin v. Presidential Fin. Corp. of Del. Valley* (*In re Cybridge Corp.*), 312 B.R. 262, 271 (D.N.J. 2004); *Holber v. Nikparvar* (*In re Incare, LLC*), No. 13-14926-ELF, Adv. P. No. 14-0248, 2018 WL 2121799, at \*15–16 (Bankr. E.D. Pa. May 7, 2018); *Bakst v. Clarkston* (*In re Clarkston*), 387 B.R. 882, 891 (Bankr. S.D. Fla. 2008); *Bakst v. Sawran* (*In re Sawran*), 359 B.R. 348, 351–52 (Bankr. S.D. Fla. 2007).

Whichever route they've taken, these courts all ended up in the same place: The bankruptcy trustee cannot "recover" property that the transferee returned to the debtor before the bankruptcy filing. And we are particularly wary of disrupting such a consistent rule in bankruptcy law, where uniformity "is sufficiently important that our Constitution authorizes Congress to establish 'uniform laws on the subject of bankruptcies throughout the United States.'" *Ultra Petroleum Corp. v. Ad Hoc Comm. of Unsecured Creditors of Ultra Res., Inc.* (*In re Ultra Petroleum Corp.*), 943 F.3d 758, 763–64 (5th Cir. 2019) (quoting U.S. CONST. art I, § 8, cl. 4).

The Trustee doesn't point to a single decision that supports his reading of § 550. The best support he has is a case applying Illinois law outside of bankruptcy. In *Nostalgia Network, Inc. v. Lockwood,* 315 F.3d 717 (7th Cir. 2002), the Seventh Circuit held a judgment creditor could void a transfer from

7

the judgment debtor to his girlfriend even though she "used much, maybe most, of the [transferred] money" to pay her boyfriend's "personal and business expenses." *Id.* at 719–20. *Nostalgia Network* did not involve the return of fraudulently transferred property to a transferor; the girlfriend did not actually return the money to her boyfriend. *Id.* at 720. There is a distinction between a transferee who retains legal title while voluntarily using the property for the debtor's benefit, and a transferee who has completely returned the property to the debtor. We are presented only with the second scenario; we need not consider the first. *Nostalgia Network* is irrelevant.

## III.

The Trustee raises four arguments against the courts' uniform interpretation of § 550. None is convincing.

## A.

The Trustee's primary argument is that a "plain reading" of § 550(d) means the single-satisfaction rule does not extend to a pre-petition reconveyance directly to the debtor. Section 550(d) says "[t]he trustee is entitled to only a single satisfaction *under subsection (a) of this section.*" 11 U.S.C. § 550(d) (emphasis added). The Trustee reads "satisfaction under subsection (a)" to grant him something like a "subsection (a) voucher," redeemable for one recovery of any transfer. If he hasn't yet used subsection (a), the Trustee would say, he still has his voucher in hand.

The text of § 550 cannot bear this strained reading. In the relevant sense, the word "satisfaction" means "[t]he payment in full of a debt, or the fulfillment of an obligation or claim." OXFORD ENGLISH DICTIONARY 502 (2d ed. 1989); *see also* WEBSTER'S SECOND, *supra*, at 2220 (defining "satisfaction" as "discharge of an obligation, whether by an actual render of what is due or by legal presumption; also that which operates so to discharge an obligation; payment; adequate compensation").

No. 18-50335

So "satisfaction" presupposes an obligation. And if that obligation has already been satisfied, the transferee has no further obligation—the trustee's "avoidance action was satisfied before it was ever commenced." *Bassett*, 221 B.R. at 55; *see also Bakst v. Wetzel* (*In re Kingsley*), No. 06-12096-BKC-PGH, Adv. P. No. 06-2109-BKC-PGH-A, 2007 WL 1491188, at *4 (Bankr. S.D. Fla. May 17, 2007) (concluding that "to the extent that the fraudulent transfer is repaid prepetition, the [trustee's] claim is satisfied"), *aff'd*, 518 F.3d 874 (11th Cir. 2008). The Trustee's reading ignores that underlying premise.[2]

And "satisfaction under subsection (a)" is a limit on *how* subsection (a) can be used—to provide only a single satisfaction—not a positive grant of recovery power or entitlement to subsection (a) recoveries. *Accord Segner v. Ruthven Oil & Gas, LLC* (*In re Provident Royalties, LLC*), 581 B.R. 185, 195 (Bankr. N.D. Tex. 2017) ("[T]he specific purpose of section 550(d) is to act as a restrictor plate on the roaring engine of recovery provided to the trustee in section 550(a)."). It's not a voucher the trustee can cash in no matter what.

## B.

The Trustee's second argument is likewise unavailing. He argues that "nothing in the legislative history suggests that the Congress intended Section 550(d) to be triggered by a pre-petition repayment to a debtor." He points to a House Report that observed the single-satisfaction rule would prohibit

---

[2] The Trustee's argument also sits uncomfortably with the broader statutory scheme. "The purpose of Section 550 is to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred." *Cybridge*, 312 B.R. at 268 (quotation omitted). But under the Trustee's reading of § 550(d), the transferee would have a powerful pre-petition incentive to *keep* the ill-gotten funds. If she keeps the ill-gotten funds, she'll still have them at her disposal to pay the single satisfaction post-petition. But if she returns them pre-petition, as Whitlock did, the Trustee would still make her pay the single satisfaction—but this time out of her own pocket. If the Code demanded such a counterintuitive result, we would expect the statute to say so more clearly. *Cf. Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883, 895 (2018) (refusing to adopt a party's reading of a Code provision because "[t]here is a simpler explanation for Congress' addition of this language that is rooted in the text of the statute as a whole").

No. 18-50335

recovery from more than one transferee "even if more than one transferee is liable." H.R. REP. NO. 595, at 375–76 (1977) (quoted in *Cybridge*, 312 B.R. at 270).

We are reluctant to rely on legislative history for the simple reason that it's not law. *See Lawson v. FMR LLC*, 571 U.S. 429, 459–60 (2014) (Scalia, J., concurring in part and concurring in the judgment) ("[W]e are a government of laws, not of men, and are governed by what Congress enacted rather than by what it intended . . . ."); *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 294 (5th Cir. 2019) (describing reliance on legislative history as akin to "looking over a crowd and picking out your friends" (quoting  Patricia M. Wald, *Some Observations on the Use of Legislative History in the 1981 Supreme Court Term*, 68 IOWA L. REV. 195, 214 (1983))). But even assuming legislative history is relevant in general, we find this particular history irrelevant. No one disputes the proposition recognized in the report: The single-satisfaction rule allows the trustee to recover only once, even if multiple transferees could be liable. *See, e.g.*, *Cybridge*, 312 B.R. at 268. That's why everyone agrees Ms. Whitlock is not liable for the $33,500 the Trustee recovered from Chantel DeBerry. The House Report says nothing about whether or how § 550(d) applies to a pre-petition reconveyance.

C.

Third, the Trustee argues that because the bankruptcy estate does not exist until the petition is filed, a pre-petition satisfaction does not count as recovery "for the benefit of the estate." 11 U.S.C. § 550(a). It's not a recovery as contemplated by § 550(a), he contends, because the *debtor*, not the estate, received the satisfaction.

But we do not hold the return of the property constitutes a recovery "for the benefit of the estate" under § 550(a). Instead, we hold there cannot be a "recovery" at all if the property has already been returned.

No. 18-50335

D.

Finally, the Trustee argues the myriad bankruptcy court cases rejecting his reading "are all distinguishable because," in those cases, "the recovery sought actually would constitute a windfall to the bankruptcy estate." He says recovery from Ms. Whitlock would not provide a windfall to Mr. DeBerry's estate because the $232,000 did not "remain in Curtis's estate at the time of the petition." And the district court agreed, concluding that "[t]hings *might* have been different had Mr. DeBerry not spent all the money before declaring bankruptcy, or had the money been spent on tangible goods that later became part of the bankruptcy estate under the trustee's control."

The Code does not give the Trustee power "to review the reasonableness of a debtor's pre-petition expenditures." *Geltzer v. Xaverian High Sch.* (*In re Akanmu*), 502 B.R. 124, 134 (Bankr. E.D.N.Y. 2013). And we see no basis in the Bankruptcy Code for distinguishing between purchasing "tangible goods" and other uses for cash. Intangible interests are just as much part of the bankruptcy estate as are tangible assets. *See Unsecured Creditors Disbursement Comm. v. Antill Pipeline Constr. Co.* (*In re Equinox Oil Co.*), 300 F.3d 614, 618 (5th Cir. 2002).

If the DeBerrys frittered the money away—and perhaps they did—it has nothing to do with the fraudulent transfer or Ms. Whitlock. *See Pearlman*, 515 B.R. at 899; *cf. Cybridge*, 312 B.R. at 272 (rejecting trustee's argument that allowing an "equitable credit" for returned funds would diminish the bankruptcy estate because "every penny [the transferee] took out [of the estate] has also been put back in"). Indeed, even the district court observed that if the Wells Fargo account had never been opened, "Mr. DeBerry could still have spent the $232,000."

11

No. 18-50335

\* \* \*

Ms. Whitlock received fraudulently transferred funds. She had an obligation to return the transferred funds to Mr. DeBerry, the transferor, for the benefit of his creditors. She could satisfy that obligation by transferring the funds back to him prior to his bankruptcy filing. Nothing required her to hold onto the funds until after he filed for bankruptcy. And if she has satisfied her obligation, there is nothing left for the Trustee to recover.[3]

The judgment of the district court is VACATED and REMANDED for further proceedings consistent with this opinion.

---

[3] The bankruptcy court did not decide whether the transfers to Mrs. DeBerry and MBC really did return the funds to the debtor. Ms. Whitlock contends she returned the funds by transferring them to Kathy DeBerry, the debtor's wife, and to MBC, the debtor's wholly-owned LLC. The Trustee argues this does not suffice to return the funds to the debtor because the "returned" funds were not held in Mr. DeBerry's name. We leave this issue for the bankruptcy court to determine in the first instance. We likewise leave for the bankruptcy court's consideration whether attorney's fees remain appropriate and, if so, in what amount.