# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 2, 2020

Lyle W. Cayce
Clerk

No. 19-50792

JAMES W. ROBERTSON, SR.,

*Plaintiff—Appellant*,

ROBERTSON TECHNOLOGIES, INCORPORATED,

*Appellant*,

*versus*

INTRATEK COMPUTER, INCORPORATED; ALLAN FAHAMI; ROGER HAYES RININGER,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:18-CV-373

---

Before WIENER, ENGELHARDT, and OLDHAM, *Circuit Judges*.

ANDREW S. OLDHAM, *Circuit Judge*:

The question presented is whether a federal whistleblower statute, 41 U.S.C. § 4712, renders unenforceable an arbitration agreement between James Robertson and his former employer, Intratek. It does not. The district court therefore correctly enforced the arbitration agreement between Robertson and Intratek. But the district court erred in compelling arbitration

No. 19-50792

of claims not covered by that agreement. So we affirm in part, reverse in part, and remand for further proceedings.

## I.

Intratek conditioned Robertson's employment on his willingness to sign an arbitration agreement. That agreement said:

> I hereby agree, pursuant to the policy, to submit to binding arbitration any employment related controversy, dispute or claim between me and the Company, its officers, agents or other employees, including but not limited to . . . tort claims . . . and claims for violation of any federal, state, or other government law, statute, regulation, or ordinance, except claims for workers' compensation and unemployment insurance benefits.
>
> I understand that by agreeing to arbitration, I am waiving the right to a trial by jury of the matters covered by the Arbitration policy.

The "Arbitration policy," in turn, covered "[a]ny controversy, dispute or claim between any employee and the Company, or its officers, agents or other employees related to employment." Robertson signed the agreement on June 17, 2011, and began working on July 11. While at Intratek, Robertson provided various information and technology services to the United States Department of Veterans Affairs ("VA").

Intratek fired Robertson in September 2015. Not long after, Robertson filed a whistleblower complaint with the Office of the Inspector General for the VA. Robertson alleged that Allan Fahami, Intratek's CEO, bribed VA officials to secure lucrative government contracts. According to the whistleblower complaint, a VA employee named Roger Rininger accepted bribes from Fahami and Intratek. An investigation followed. At the time Robertson filed suit, it remained ongoing.

On May 7, 2018, Robertson filed suit in federal district court against Intratek, Fahami, and Rininger. Robertson alleged that Intratek violated 41 U.S.C. § 4712 by firing him for reporting misconduct. Robertson further alleged that the defendants tortiously interfered with Robertson's business relationships.

Intratek and Fahami moved to stay the suit and compel arbitration of the claims against them. Rininger—who worked for the VA—obviously was not a party to the Intratek-Robertson arbitration agreement. So Rininger and Robertson "agreed to effectively stay the case as it pertained to Mr. Rininger" until the court ruled on the motion to compel arbitration.

The district court referred the matter to a magistrate judge. The magistrate judge decided that 41 U.S.C. § 4712 didn't bar arbitration of the whistleblower claim. It also found that all of Robertson's claims (including, apparently, those against Rininger) fell within the scope of the arbitration agreement. Furthermore, the magistrate judge determined that the case should be dismissed instead of stayed, as "each of Plaintiff's claims is subject to arbitration."

Robertson filed objections to the magistrate judge's recommendation on December 20, 2018. Then, on January 29, 2019, Robertson moved to amend his complaint and add his company, Robertson Technologies, Inc. ("Robertsontek"), as a plaintiff. Intratek and Fahami filed their opposition to Robertson's objections and his motion to amend his complaint. Meanwhile, Rininger and Robertson stipulated that Rininger could wait until 21 days after any ruling on the motion to compel arbitration before filing an answer to the original complaint.

The district court adopted the report and recommendation of the magistrate judge and denied Robertson's motion to amend his complaint. On the motion to amend, the district court found that "Robertson's proposal to

add his alter ego, Robertson Technologies, Inc., amounts to a tactical maneuver to avert the real possibility that this action will be compelled to arbitration." As for the magistrate judge's recommendation, the court overruled all of Robertson's objections. The court also explained that "all of Robertson's claims are subject to arbitration." Thus the court granted the motion to compel arbitration and dismissed the case without prejudice. The court entered final judgment. Robertson timely appealed.

We review a grant of a motion to compel arbitration *de novo*, *Dealer Comput. Servs., Inc. v. Old Colony Motors, Inc.*, 588 F.3d 884, 886 (5th Cir. 2009), and a denial of leave to amend pleadings for abuse of discretion, *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013).

## II.

The principal question on appeal is one of first impression in our Circuit: whether Robertson can use 41 U.S.C. § 4712 to escape the arbitration agreement he signed. Statutory text says no. So does Supreme Court precedent. And the legislative history is irrelevant.

## A.

In general, federal law requires federal courts to enforce arbitration agreements. In 1925, Congress enacted the Federal Arbitration Act ("FAA") "as a response to judicial hostility to arbitration." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012). Section 2 of the FAA provides that written arbitration agreements are generally "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 thus obligates courts to enforce arbitration agreements according to their terms "unless the FAA's mandate has been overridden by a contrary congressional command." *CompuCredit*, 565 U.S. at 98 (quotation omitted).

To show a "contrary statutory command," the party opposing arbitration must show that "Congress intended to preclude a waiver of a judicial forum" for the claims at issue. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). If "Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum," the Supreme Court has said "that intention will be deducible from text or legislative history." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).[1] Throughout this inquiry, courts should keep "in mind that 'questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Gilmer*, 500 U.S. at 26 (quotation omitted).

The Court recently "stressed that the absence of any specific statutory discussion of arbitration or class actions is an important and telling clue that Congress has not displaced the Arbitration Act." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1627 (2018). The Court explained:

> In many cases over many years, this Court has heard and rejected efforts to conjure conflicts between the Arbitration Act and other federal statutes. In fact, this Court has rejected *every* such effort to date (save one temporary exception since overruled), with statutes ranging from the Sherman and Clayton Acts to the Age Discrimination in Employment Act,

---

[1] The Court has also indicated that a contrary congressional command may be discerned from "an 'inherent conflict' between arbitration and [another statute's] underlying purposes." *Gilmer*, 500 U.S. at 26. It's not clear whether statutory purpose remains a part of the Court's prescribed inquiry on this issue. *See CompuCredit*, 565 U.S. at 95–108 (analyzing issue without considering statutory purpose). *But see id.* at 675 (Sotomayor, J., concurring in the judgment) (stating that purpose remains relevant to this inquiry). In any event, Robertson hasn't advanced any argument on statutory purpose and thus has forfeited the issue. *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its initial brief on appeal." (emphasis omitted)).

the Credit Repair Organizations Act, the Securities Act of 1933, the Securities Exchange Act of 1934, and the Racketeer Influenced and Corrupt Organizations Act.

*Ibid.* (collecting cases). Thus, the party opposing arbitration—and urging a congressional command contrary to the FAA—faces a high bar.

Robertson cannot hurdle it with 41 U.S.C. § 4712. We start, as always, with the statutory text. *See Whitlock v. Lowe (In re DeBerry)*, 945 F.3d 943, 947 (5th Cir. 2019). Section 4712 requires a complainant like Robertson to exhaust administrative remedies before filing suit. *See* 41 U.S.C. § 4712(b), (c)(1). And § 4712 further specifies that administrative remedies are exhausted when the agency acts or fails to act for specified time periods:

> **(2) Exhaustion of remedies.**—If the head of an executive agency issues an order denying relief under [(c)](1) or has not issued an order within 210 days after the submission of a complaint under subsection (b), or in the case of an extension of time under paragraph (b)(2)(B), not later than 30 days after the expiration of the extension of time, and there is no showing that such delay is due to the bad faith of the complainant, the complainant shall be deemed to have exhausted all administrative remedies with respect to the complaint, and the complainant may bring a de novo action at law or equity against the contractor or grantee to seek compensatory damages and other relief available under this section in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy. Such an action shall, at the request of either party to the action, be tried by the court with a jury. An action under this paragraph may not be brought more than two years after the date on which remedies are deemed to have been exhausted.

*Id.* § 4712(c)(2). Robertson wrenches out of context the second sentence of this paragraph—"[s]uch an action shall, at the request of either party to the

action, be tried by the court with a jury"—and says it provides him a freestanding "right" or "remedy" to a jury trial. Then he argues that his jury trial "right" or "remedy" cannot be waived in an employment agreement:

> **(7) Rights and remedies not waivable.**—The rights and remedies provided for in this section may not be waived by any agreement, policy, form, or condition of employment.

*Id.* § 4712(c)(7). Thus, Robertson concludes, § 4712(c)(2) and (7) preclude Intratek from taking away his "right" or "remedy" of a jury trial by enforcing the arbitration agreement.

Robertson confuses the rights and remedies created by § 4712 with the means it provides to secure them. Section 4712 creates whistleblower rights: "An employee of a contractor, subcontractor, grantee, or subgrantee or personal services contractor may not be discharged, demoted, or otherwise discriminated against as a reprisal for" blowing the whistle on certain government-contracting abuses. *Id.* §4712(a)(1). And § 4712 creates an administrative apparatus to review whistleblowers' complaints and to afford them administrative remedies. *Id.* § 4712(b). Section 4712 further specifies that "[a]n action under this paragraph may not be brought more than two years after the date on which *remedies*"—that is, administrative remedies— "are deemed to have been exhausted." *Id.* § 4712(c)(2) (emphasis added). Thus, the text and structure of § 4712 make clear that a jury trial is one way to vindicate a whistleblower's statutory *rights* after the whistleblower exhausts administrative *remedies*; the jury trial is not itself a "right" or "remedy" created by § 4712.

## B.

A long line of Supreme Court precedent confirms our interpretation of § 4712. Start with *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009). The question presented was whether the FAA required enforcement of a

"provision in a collective-bargaining agreement that clearly and unmistakably require[ed] union members to arbitrate claims arising under the Age Discrimination in Employment Act of 1967 (ADEA)." *Id.* at 251. The Court held yes. *Id.* at 274.

In so holding, the Court dismantled an argument much like Robertson's. Pyett claimed that the ADEA provided "a '[substantive] right' to proceed in court." *Id.* at 259 (alteration in original; quoting 29 U.S.C. § 626(f)(1)). And ADEA said that "[a]n individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary." 29 U.S.C. § 626(f)(1). No matter, the Court said. "[T]he agreement to arbitrate ADEA claims is not the waiver of a substantive right as that term is employed in the ADEA." *14 Penn Plaza*, 556 U.S. at 259 (quotation omitted). For that reason, the Court criticized an earlier decision for "confus[ing] an agreement to arbitrate those statutory claims with a prospective waiver of the substantive right." *Id.* at 265 (discussing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974)).

The Court took pains to correct that confusion: "The decision to resolve ADEA claims by way of arbitration instead of litigation does not waive the statutory right to be free from workplace age discrimination; it waives only the right to seek relief from a court in the first instance." *Id.* at 265–66; *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001). On that account, the "right" to a judicial forum wasn't a "right" protected by the waiver limitation at all. *14 Penn Plaza*, 556 U.S. at 259; *see also McLeod v. Gen. Mills, Inc.*, 856 F.3d 1160, 1164 (8th Cir. 2017) (holding ADEA's antiwaiver provision "refers narrowly to waiver of *substantive* ADEA rights or claims— not, as the former employees argue, the 'right' to a jury trial or the 'right' to proceed in a class action").

*CompuCredit* teaches the same lesson. There, the issue was whether arbitration could be compelled for claims under the Credit Repair Organizations Act ("CROA"). *CompuCredit*, 565 U.S. at 96 (discussing 15 U.S.C. §§ 1679 *et seq.*). CROA provided a private cause of action to those aggrieved by the conduct of credit repair organizations. *Id.* at 98. The statute also had an antiwaiver provision. It declared that "[a]ny waiver by any consumer of any protection provided by or any right of the consumer under this subchapter" was "void" and could "not be enforced by any Federal or State court or any other person." 15 U.S.C. § 1679f(a).

Nonetheless, the Court rejected the notion that CROA "provide[d] consumers with a 'right' to bring an action in court." *CompuCredit*, 565 U.S. at 100. The statute's references to court proceedings didn't change that outcome. The Court observed that "[i]t is utterly commonplace for statutes that create civil causes of action to describe the details of those causes of action, including the relief available, in the context of a court suit." *Ibid.* So "[i]f the mere formulation of the cause of action in this standard fashion were sufficient to establish the contrary congressional command overriding the FAA, valid arbitration agreements covering federal causes of action would be rare indeed." *Id.* at 100–01 (quotation omitted). Of course, they are not rare. *See id.* at 101 (citing *Gilmer*, 500 U.S. at 28; *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 240 (1987); *Mitsubishi Motors*, 473 U.S. at 637). Relying on those holdings, the *CompuCredit* Court determined that the waiver of "initial judicial enforcement" wasn't a waiver of a right covered by the antiwaiver provision. *Ibid.*

These cases reflect the Supreme Court's dogged insistence that Congress speak with great clarity when overriding the FAA. *See, e.g.*, *Epic Sys.*, 138 S. Ct. at 1627. That long line of decisions has also given Congress even more reason to use pellucid language in antiwaiver provisions. *Cf. CompuCredit*, 565 U.S. at 104 n.4 (observing that a line of cases dating back

decades gave Congress reason to write clear antiwaiver provisions); *id.* at 116 (Ginsburg, J., dissenting) ("Our decisions have increasingly alerted Congress to the utility of drafting antiwaiver prescriptions with meticulous care."). As the Court observed in *Epic Systems*, Congress has "shown that it knows how to override the Arbitration Act when it wishes." 138 S. Ct. at 1626. It didn't do that with 41 U.S.C. § 4712.

## C.

The Supreme Court has also said legislative history is a data point in this inquiry. *See Mitsubishi Motors*, 473 U.S. at 628. *But cf. CompuCredit*, 565 U.S. at 96–105 (not discussing legislative history). Both parties zero in on the same slice of legislative history—a prior Senate draft version of the antiwaiver provision. It said: "The rights and remedies provided for in this section may not be waived by any agreement, policy, form, or condition of employment, *including by any predispute arbitration agreement, other than an arbitration provision in a collective bargaining agreement.*" 158 Cong. Rec. S6142 § 844 (Sept. 11, 2012) (Senate Amendments to H.R. 4310) (emphasis added). The House rejected that italicized language.

The Supreme Court has told us that such drafting history "tells us nothing." *Murphy v. Smith*, 138 S. Ct. 784, 790 n.2 (2018). The legislators who voted to drop the italicized "including" clause might've thought it was "flabby duplication." *Ibid.* Or perhaps they dropped it because they substantively disagreed with it. *See ibid.* "There is no way to know, and we will not try to guess." *Ibid.* And whatever that deletion might (or might not) mean, this wee snippet of legislative history can't provide anything like the clarity needed to override the FAA. *Cf. CompuCredit*, 565 U.S. at 103 (noting that if Congress meant to displace arbitration provisions, "it would have done so in a manner less obtuse than what respondents suggest"); *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1815 (2019) ("So in the end and at most, we

are left with exactly the kind of murky legislative history that we all agree can't overcome a statute's clear text and structure."). Therefore, § 4712's history does nothing to change our reading of its plain text.

### III.

The next question is whether the arbitration policy covers Robertson's claims against Intratek, Fahami, and Rininger. It plainly does for the first two. It plainly does not for the third one.

### A.

We start with Intratek and its CEO Fahami. Intratek, Fahami, and Robertson are all governed by an arbitration policy that Robertson signed at the beginning of his employment. The relevant text of the arbitration policy says:

> Any controversy, dispute or claim between any employee and the Company, or its officers, agents or other employees related to employment, shall be settled by binding arbitration, at the request of either party. . . .

> The Claims which are to be arbitrated under this Policy include, but are not limited to claims for wages and other compensation, claims for breach of contract (express or implied), claims for violation of public policy, tort claims, and claims for discrimination and/or harassment (including, but not limited to, race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, age, pregnancy, sex or sexual orientation) to the extent allowed by law, and claims for violation of any federal, state, or other government law, statute, regulation, or ordinance, except for claims for workers' compensation and unemployment insurance benefits.

Robertson makes two arguments. Both border on frivolous. First, he says the policy applies to "any employee," so it does not apply to Robertson

because Intratek fired him. But the policy expressly mentions claims for *unemployment* insurance benefits. If the policy only covered claims by current employees, it wouldn't need to mention unemployment at all. We refuse to read that clause as surplusage. *See Hawthorne Land Co. v. Equilon Pipeline Co., LLC*, 309 F.3d 888, 893 (5th Cir. 2002) ("A contract should be interpreted so as to avoid neutralizing or ignoring a provision or treating it as surplusage."); *Ewing Constr. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 37 (Tex. 2014) (similar).

Second, Robertson argues that the arbitration policy expressly applies to specified claims and makes no mention of the wrongful-termination and tortious-interference claims he brought against Intratek. Robertson's premise is wrong because the policy explicitly covers claims under "any federal . . . law" (like Robertson's claim under § 4712), as well as "state . . . law" and "tort" (like Robertson's claims for wrongful termination and tortious interference). Moreover, the policy applies to claims that "*include, but are not limited to*," the specified examples. The policy also applies to "[a]ny controversy, dispute or claim between any employee and the Company, or its officers, agents or other employees related to employment." And Robertson cannot seriously contest that his claims are "related to [his] employment" at Intratek.[2] The policy plainly applies to Robertson's claims

---

[2] Consider, for example, Robertson's tortious-interference claim. Robertson alleges that Intratek and Fahami first fired him and then defamed him to his would-be future business partners. Had Robertson's relationship with his employer not gone awry, Intratek and Fahami would've lacked a motive to defame him. What Robertson calls a "campaign of tortious interference," was, as counsel acknowledged, a "response to [Robertson] opposing illegal activity . . . *while he was employed*" at Intratek. Oral Arg. 12:49 to 13:01. Thus, the content and cause of the "campaign of tortious interference" both relate to Robertson's employment with Intratek.

against Intratek. *See Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990).

## B.

The same is not true of Robertson's claims against Rininger. Rininger is a VA official. He therefore (obviously) never signed any employment contract with Intratek, much less an employment-related arbitration agreement. And although nonsignatories can be compelled to arbitrate under certain conditions, *see Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355–56 (5th Cir. 2003), Robertson never moved to arbitrate his claims against Rininger. Nor did the district court explain any basis (lawful or otherwise) for compelling arbitration of Robertson's claims against Rininger. It's with good reason, then, that neither Rininger nor Intratek even attempt to explain how claims against Rininger could be arbitrable. The district court's decision to compel arbitration of these claims was erroneous.

## IV.

Finally, we face the question of whether the district court abused its discretion by denying Robertson's motion to amend his complaint. It did not.

Rule 15 says courts "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). Though that's a generous standard, "leave to amend can be properly denied where there is a valid justification." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006). Valid justifications include undue delay, bad faith, and dilatory motive. *See Cantú v. Moody*, 933 F.3d 414, 424 (5th Cir. 2019) (quotation omitted). The district court also may consider "whether the facts underlying the amended complaint were known to the party when the original complaint was filed." *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 316 (5th Cir. 1996). We review denial of leave to amend pleadings for abuse of discretion. *Filgueira*, 734 F.3d at 422.

The district court denied Robertson leave to add his company (Robertsontek) as a co-plaintiff. It's not as if Robertson was previously unaware of his own company's existence or potential interest in the case. Nor was Robertson unaware of the risk that a federal court would enforce his arbitration agreement with Intratek. Still he waited nine months—until the magistrate judge recommended compelling arbitration—to move for leave to add a party who could not be compelled to arbitrate. That led the district court to conclude that Robertson's motion was an untimely "tactical maneuver" meant to "challenge the effect of the Report and Recommendation" by preventing arbitration of the claims against Intratek and Fahami. That was not an abuse of discretion. *See Cantú*, 933 F.3d at 424; *Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir. 1992).

Nor can Robertson demand leave to amend under Rule 19. That rule requires the joinder of necessary parties so long as they won't deprive the court of subject-matter jurisdiction. Fed. R. Civ. P. 19(a)(1); *see also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 90 (2005) ("Rule 19 provides for the joinder of parties who should or must take part in the litigation to achieve a just adjudication." (quotation omitted)). "Rule 19 is designed to protect the interests of *absent persons* as well as those already before the court from multiple litigation or inconsistent judicial determinations." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1602, at 22 (3d ed. 2001) (emphasis added).

On this record, however, Rule 19 is inapplicable. The district court described Robertsontek as Robertson's "alter ego." Because Robertsontek was merely Robertson's alter ego, it wasn't absent from or necessary to the suit.

No. 19-50792

\*    \*    \*

The district court's judgment is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.